## M'GOWEN and WIFE v. YOUNG.

1. Though a party be injoined from removing property out of the State, by a Court of Chancery, yet he may maintain trover for its conversion.
2. In trover, if the plaintiff has not the entire interest in the property, the defendant may shew it to reduce the damages, and the plaintiff may recover to the extent of his interest.
3. The answer of a party in Chancery is proper evidence against him, and so much of the bill as is necessary to explain the answer.

THIS writ of error was prosecuted to reverse the judgment of the Circuit Court of Tuscaloosa county, rendered in an action of trover. E. Young commenced the suit in said Court on the 3d of January 1827, against Mary Ann Hill, who since the rendition of the judgment intermarried with M'Gowen, for the conversion by her of four negroes. At March term 1828, a trial was had on the plea of the general issue, and Young obtained a verdict and judgment for $1425 damages.

On the trial, the defendant Mary Ann offered in evidence the record and proceedings of a Chancery cause, then still pending and undetermined in said Court, on the equity side; The proceedings consisted of a bill originally filed by Thomas Hill, her former husband, against Young, the plaintiff, and others his creditors, in 1824;

a bill of revivor filed by said Mary Ann, as admi-
nistratrix, and a supplemental bill filed by her: also the
answer of Young to the original bill, and several inter-
locutory decrees made in the cause, bonds, process,
sheriff's returns, &c. The bill filed by Thomas Hill
charged that Young was entitled only to a life estate in the
slaves, that the father of the wife of E. Young had con-
veyed them to her, and in case she died without lawful
issue, that then they were to go to the complainant and
his heirs; that Mrs Young was likely to have no chil-
dren, that Young had got in debt and had absconded, and
that his creditors had levied attachments on the slaves,
which were about to be sold, &c. On this bill an order
was made by the Chancellor, to restrain all persons from
removing the slaves out of the jurisdiction of the State,
unless bond and security were given to secure the remain-
der belonging to Hill, according to the further order of
the Court. In 1825, T. Hill died, and his widow, Mary
Ann, filed a bill of revivor as administratrix. In 1826,
Young returned and filed his answer to the bill. Under
these circumstances, no bond having been given by
Young, the negroes came to the possession of Mrs Hill,
on the first January 1827. After the suit was brought,
and before the trial, Mrs Hill filed a supplemental bill
against Young, alleging he was still improvident, that he
had endeavored to sell the slaves, that there was still no
prospect of Mrs Young's having any issue; that the re-
mainder belonged to her children whose guardian she
was, and praying the further order of the Court for the
security of the remainder, &c. Upon this, a further order
was made by the Chancellor, requiring the sheriff to take
the negroes into his possession, and if within a certain
time after notice Young did not give the security requir-
ed, that they should then be delivered to Mrs Hill, on
her giving the security required by the order, &c. Young
having failed to give the requisite security, the slaves,
under this order, had been delivered by the sheriff to
Mrs Hill the defendant, she having complied with the
terms of the order of the Chancellor. This occurred pre-
viously to the trial at law. Young had not yet answered
the supplemental Bill, had failed in giving any security,
and the proceedings were still pending in the Court of
Chancery. This evidence, and each part of it, was reject-
ed by the Court, and deemed inadmissible, except the
answer of Young, and so much of the bill as was necessa-
ry to explain the answer.

The above is the principal matter shewn by a bill of exceptions taken on the trial, and the decision rejecting the evidence is assigned for error, by the defendant below Mary Ann, and M'Gowen her husband, who was admitted a party as such in this Court.

BARTON & STEWART, for the appellants.

SHORTRIDGE, CRABB and P. N. WILSON, for the appellee.

By LIPSCOMB, C. J.   The first order of the Chancellor did not operate on the property in controversy, but simply injoined it from being removed out of the jurisdiction of the Court. If this order had directed the sheriff to take possession of the property, so long as the order had any influence, it would have barred the plaintiff's suit at law.   But the plaintiff was then in the peaceable and rightful posession, and it was only a possible residuary interest, that complainant sought to secure.   He then had a right to sue for the property, at the time the suit was commenced, even if the residuary interest was in the complainant.   It is contended however, that the second order of the Chancellor on the supplemental · Bill, interposed a bar to a recovery.   If the plaintiff had a right to the property at the time he commenced suit, which is not controverted, he had a right to recover damages for its conversion, commensurate with his interest; and the subsequent order of the Chancellor, could not affect such right, as it did not injoin the suit at law.

The counsel for the plaintiffs in error has attempted, with much ingenuity, to assimilate the proceedings in chancery to the admiralty process, operating *in rem;* and he would draw the conclusion, that the strange and annomalous case of two jurisdictions, both operating at the same time, on the same property, was presented. The premises from which this conclusion has been attempted to be drawn, are not well founded.   The two Courts were not proceeding at the same time against the property. Chancery can at all times proceed *in rem,* but such had not been the course in this case.   The suit at law is not of that character, nor does it seek a recovery *in specie.* If the action had been detinue, it might have been urged with much force, that the last order of the Chancellor, on the complainat's Bill, would afford an excuse for not delivering the property.   But in the action of trover, it

could certainly be no defence. It was urged, however, that if the testimony could not amount to a defence to the action, yet it ought to have been received in mitigation of damages. A slight examination will show that this position is wholly untenable. In this action, and on the issue joined, the jury could fairly take into consideration, by way of reducing the amount of damages, the value of the complainant's residuary interest in the property in contest; and evidence of a legal character, should have been admitted to show what was the probable value of such interest. But neither the Bill, the supplemental Bill, nor the several orders made by the Chancellor, could have proven that complainant had any interest, either present or in expectancy, in the property sued for; the answer of Young, so far as he made admissions against himself, was proper testimony, and it was admitted by the Judge who tried the cause; it was right enough too, to refer to the Bill for explaining the answer. Suppose the testimony rejected had been admitted, it could only have tended to mislead the jury, if it could have any effect at all. And if it had induced the jury to reduce the damages to a mere nominal amount, what possible remedy could the plaintiff at law have resorted to? The judgment would have vested an absolute right to the slaves in the defendant, although by her own shewing, she claimed only a possible reversionary interest in them, on the contingency that Mrs Young, the wife of the plaintiff, should die without issue capable of inheriting. We are therefore of opinion that there is no error in the judgment of the Circuit Court.

Judgment affirmed.

JUDGE CRENSHAW, not sitting.