## BAGBY, USE, &c. v. HARRIS.

1. Nominal damages are always proper, when a breach of duty is made out, and the extent of the injury is not shown by the evidence.
2. In an action against the sureties of a sheriff, for his neglect in releasing a boat attached under admiralty process, the fact that a subsequent sheriff, to whom final process was issued, could have seized and sold it, is not sufficient to mitigate the damages, unless the plaintiff is connected with the last neglect, by some wilful default.
3. In such an action, to charge the sheriff, it is unnecessary to show, either a demand of the boat, he having gone out of office, or a distringas to him, if it is shown that he has parted with the custody.

Writ of Error to the Circuit Court of Sumter.

DEBT upon the official bond executed by Wm. Johnson, as sheriff of Sumter county, for the due performance of the duties of that office.

The first count of the declaration deduces the breach of the condition of the bond from the following facts: On the 14th of June, 1837, Austin & Tardy sued out a writ of seizure against the steamboat Ponchartrain, to secure a demand of $2,588; this writ was delivered to Johnson, he then being sheriff, and under it he seized and took the boat into custody, but afterwards released it, whereby the said Austin & Tardy have wholly lost the benefit of said seizure.

The second count sets out the same facts, and also, that Austin & Tardy recovered a judgment in their suit against the boat, for $2,747, besides costs, and thereupon sued out a writ of execution, or order of sale, on the third day of August, 1838, which was delivered to one Womack, then sheriff of Sumter county, to be executed, but this could not be done by reason that the said Johnson, so being sheriff, had released the boat from his custody, &c.

The defendant pleaded—1. That the sheriff, Johnson, kept the steamboat, when seized, in his custody, until the return of the writ, *without this*, that he released the said

boat, as the plaintiff in his said breaches has alledged. To this the plaintiff replied, "that Johnson did not keep and hold the boat, as is alledged by the defendant in his plea, but on seizing the same, voluntarily took from one Burton and one Whitsett, a pretended bond with condition." This bond and condition is set out in the replication, and is payable to Johnson, as sheriff, in the sum of $5,200, and the condition, after reciting the proceedings in the libel suit, and that Burton had claimed and replevied the boat, provides, that if the said Burton shall return the said boat, so that the same may be subject to, and taken on execution, or other final process thereon, then the bond to be void. It was assigned by Johnson to Austin & Tardy, and returned to the office of the clerk of the County Court of Sumter, from which Court the writ of seizure issued. "And that the said Johnson, upon the taking of this bond, without the consent of Austin & Tardy, released and discharged the boat from custody, and has not since had or kept the same to answer to the exigencies of the writ. Upon this issue was joined to the country.

2. A plea which was overruled on demurrer, and therefore unnecessary to be noticed here.

3. That true it is, &c. (admitting the facts of the execution of the bond, and the proceedings in the libel suit,) but the said Johnson, upon bond being executed to him, bearing date, &c., (setting out the bond as described in the replication to the first plea,)put the boat in the custody of the obligors (to that bond,) which said bond was assigned to the said Austin & Tardy, by the said Johnson, sheriff as aforesaid. And the defendant saith, afterwards, upon the rendition of the judgment in the case, and after the term of office of the said Johnson had expired, a writ of execution was issued to the sheriff who succeeded him, commanding the said sheriff to seize, &c. And that, whilst the said writ was so in the hands of the said sheriff, the said steamboat was ready, and could, and would have been surrendered to the exigencies of said writ, but that the said Austin & Tardy, by their attorney, directed the said sheriff not to proceed with the sale of the boat, but that they would proceed on the bond. On this the plaintiffs took issue.

At the trial upon these issues, a bill of exceptions was sealed, at the instance of the plaintiff, which discloses that the plaintiff gave in evidence the transcript of the record of the suit at the instance of Austin & Tardy against the steamboat Ponchartrain, which resulted in a judgment of condemnation to pay $2,747, besides costs. The writ of seizure in the case, is returned by Johnson, as sheriff, that he had taken the boat, and had her in custody. The order of sale was placed in the hands of the sheriff of the same county, one Womack, who returned that the said boat was not within his county. It was also proved, that at the time of the seizure, Johnson was sheriff of Sumter county, and of his own volition took the bond from Burton and Whitsett, set out in the pleadings, which he returned, assigned by himself, pending the libel suit, to Austin & Tardy, into the clerk's office, where it was placed among the papers of that suit. The assignment of the bond was drawn by the attorney of Austin & Tardy, but without their knowledge or authority. It was also proved, that Johnson went out of office on the first Monday of August, 1837, and that one Womack became and was his successor for the ensuing three years. The order of sale came to his hands, and was returned as before stated. Womack entered upon the bond taken by Johnson, that it was forfeited, as the obligors had " wholly failed to deliver and restore the steamboat within the county of Sumter."

There was also evidence conducing to show, that the boat, in April, 1838, was sold in Mobile, under admiralty proceedings in that court ; and that it was purchased at said sale by one Stone, who then run it ; but it was, during the time the order of sale was in Womack's hands, and before and after, frequently at Gainesville, in Sumter county, and could have been seized by him. There was also evidence conducing to show, the boat was worth more than the amount of Austin & Tardy's judgment.

The court charged the jury, that the bond taken, and the placing of the boat in the possession of the obligors, was not a performance (by the sheriff ) of his duty ; and that he and his sureties were liable for any injury Austin & Tardy might have sustained by means thereof. That if Womack committed a default in not taking the boat, the default of John-

son was distinct from that, and Austin & Tardy could not, by Johnson and his sureties, be turned over to seek redress against Womack, for any default on the part of Johnson; but if Womack could have taken and sold the boat, under the process received by him, the plaintiffs would be entitled to recover slight damages, if any. The plaintiffs excepted to this charge, and now assign it as error.

R. H. SMITH, for the plaintiff in error, argued—

1. That the supposed liability of Womack was not a matter either in bar or in mitigation of damages. [Webb v. Bumpass, 9 Porter, 201; Strange v. Kenan, 8 Ala. Rep. 816; West v. Tuttle, 11 Wend. 637; Whitehead v. Varnum, 14 Pick. 523; Clapp v. Cowan, 7 Mass. 98.]

2. In admiralty proceedings, the officer has no authority to bail without an order of court. [Dunlap, Adm'r, P. Ch. 7.] Here the bond is not within the scope of the statutes. [Richardson v. Cleveland, 5 Porter, 257; S. P. 2 Ala· Rep. 742.] And thereupon the sheriff is liable as for an escape. [Watson on Sheriffs, 23, 117, 86; 20 John. 64.]

3. It was the duty of the old sheriff to hand over the boat to his successor. [19 Viner, 451, § 4; 18 Wend. 500; 21 Wend. 236; 20 John. 64.] And as he surrendered the possession to another, he is liable to the action. [4 East, 504; 15 Ib. 78.]

H. I. THORNTON and WM. G. JONES, for the defendant, argued—

1. That the boat itself was liable to be seized, as the lien was not destroyed by taking the bond, and if it was in the power of Womack to seize it, the actual damage resulted from his omission to do so. The addition to the charge of the words "*if any*," was probably induced by the circumstance, that two distinct issues were submitted, and the charge applied to the mitigation of damages upon the one, in the event they found the other against the defendant.

2. But under the facts of this case, the defendant was entitled to a verdict, and therefore the court will not reverse. The sheriff cannot be expected to retain actual possession, by himself, of property levied on, but may place it in the

hands of a bailee. He has no right to deliver it to his successor, or rather cannot relieve himself from liabily by doing so. [Watson on Sheriffs, 15; 7 Mass. 505; 2 N. H. 184; Bondurant v. Buford, 1 Ala. Rep. N. S. 359.] He by law is required to have the boat forthcoming in the event a judgment is obtained and a demand made. If otherwise, it would be his duty to watch the progress of the suit, in order to ascertain the precise moment of obtaining judgment. When then, the court charged, the plaintiff was entitled to slight damages, if any, it was an error, if at all, against the defendant, for he was clearly entitled to no damages whatever.

GOLDTHWAITE, J.—1. The only mode by which the charge given in this case, can be made consistent in all its parts, is to take it as instructing the jury, that if the new sheriff, at some time when the final process was in his hands, could have seized and sold the boat, then, that slight damages only should be given, in the event any were assessed. We incline to think that this is the proper interpretation of what is set out in the bill of exceptions; and we the more readily take this view, because the rule is quite clear, that nominal damages are always proper when a breach of duty is made out, and the extent of injury is not shown by the evidence, and it is scarcely possible the law on this point should have been mistaken. [Loftin v. Williams, 16 Pick. 64; Whittimore v. Colton. 1 Gill, 478.]

2. But even with this interpretation, the charge, in our judgment, involves a serious error. Whenever a breach of duty is made to appear, there is no question that the person in default is answerable in damages to the injured party, to the extent of the injury; but it sometimes happens there is great difficulty in the application of this rule, when the party to whom the duty is to be performed has other remedies of which he may avail himself, without proceeding for the breach of duty. Thus it has been held, when the omission of duty was in failing to return a bail bond, that the delivery, or the offer to deliver it, in season to enable the party to prosecute a *sci. fa.* would reduce the damages to a nominal sum. [Glozer v. Rood, 2 Metc. 490.] And a neglect by an

23

agent to notify his principal of the dishonor of a note, by which some of the parties to it are discharged, does not necessarily cause a damage to the amount of the note, if there be solvent parties remaining bound upon it. [Bank of Mobile v. Huggins, 3 Ala. Rep. 206.] It was in view of these and similar decisions, that the charge was most probably given, but there is a manifest distinction to be observed when the principle which governs them is to be applied to the failure of an officer to make the money upon an execution, or out of property attached. In either case, the party to whom the duty is due, has proceeded beyond a general liability, and is seeking to have the fruits of a specific lien. If the neglect of duty with reference to such process, is such, that the effect of a judgment appears to be lost, the amount of the judgment so rendered ineffectual, is *prima facie* the measure of damages for the breach of duty, but even then it may be lessened by evidence of the inability of the debtor to pay, [Welch v. Bartlett, 10 Mass. 476;] or by proof that the attached goods would produce only a part of the sum. We are not prepared to say, that when the default is negligent only, and not wilful, that the damages might not be lessened, if the officer was prepared to show, that the party had refused to take means within his power to coerce the demand from the original debtor; but, however this may be, we are entirely satisfied, that the damages cannot be mitigated by merely showing, that the original debtor was solvent and able to pay; or that, in the attempt to make him pay, other defaults have taken place. If this was sufficient, it is evident, when the debtor is of sufficient ability, the excuse may be urged by each successive officer, and the plaintiff will only reach the fruits of his judgment when he finds one willing, as well as bound to perform his duty. We come, then, to the conclusion, that even if the new sheriff was able, under the process in his hands, to have seized and sold the boat, this circumstance, unless the plaintiffs are connected with it by some wilful default, is not sufficient in mitigation of damages.

3. It is insisted, however, that the evidence shows no breach of duty, by the old sheriff, inasmuch as no demand was made of him for the boat, and as that will be presumed to remain in his custody. The first breach assigned in the

declaration is, that the officer has not kept the boat to answer the judgment, and if this was made to appear, there certainly was no necessity to issue either an order of sale or a *distringas* to him—conceding, for the purpose of this argument that he was entitled to retain the custody of the boat after the devolution of his office upon another. The breach of duty is complete, if he has so disposed of the boat, that the relators cannot have the effect of their judgment. [West v. Tuttle, 11 Wend. 639.]

Judgment reversed and cause remanded.