[Comer v. Age Herald Publishing Co.]

# Comer *v.* Age Herald Publishing Co.

## *Libel.*

(Decided July 2, 1907.  44 South. 673.)

1. *Statutes; Title; Amendatory Act.*—The Act of Feb. 20th, 1899, (General Acts 1898-9, p. 32) amendatory of section 1441, of the Code of 1896, merely substitutes for certain words of the original section a provision clearly pertinent to the general subject of the section, and is not repugnant to section 45 of the Constitution of 1901; Section 2, article 4, Constitution 1875.

2. *Constitutional Law; Remedies for Injury; Punitive Damages.* The Act of Feb. 20, 1899, (General Acts 1898-9, p. 32) amending section 1441, Code 1896, is not in contravention of section 13 of the Bill of Rights guaranteeing every person a remedy for any injury done them, since actual damages are all damages other than punitive damages.

3. *Libel; Notice Before Action.*—Where a plaintiff waived punitive damages and sues only for actual damages, the notice prescribed by the Act of Seb. 20, 1899, (General Acts 1898-9, p. 32, amending Section 1441, Code 1896), is not necessary to be given, and such a notice is not a condition precedent to bringing a suit.  (HARALSON, SIMPSON and ANDERSON, JJ., dissent.)

APPEAL from Birmingham City Court.

Heard before Hon. CHARLES A. SENN.

Action by B. B. Comer against the Age-Herald Publishing Co., for libel. From a judgment sustaining demurrers to complaint plaintiff appeals. Reversed and remanded.

This was an action begun by Braxton B. Comer for damages for libel growing out of a communication published in the Birmingham Age-Herald with the intent to defame plaintiff. The publication is as follows: "Comer's Idea of Honesty Peculiar. Wanted to Pay His Cousin and "Do" the Railroads. An Affidavit is Submitted. Offered to Pay E. A. Dickert Money for Repairs, Instead of Letting it Go to Dickert's Employe. Evidence of Unfitness." Then follows an affidavit,

made by Dickert, charging in effect that he (Dickert) was section foreman of the Louisville & Nashville Railroad Company, and as such foreman made certain repairs on the track leading to the Avondale Cotton Mill, and that, when he had finished making them, Comer asked him the approximate total cost of the repairs, and, being told that they were $30, he invited Dickert into his private office and offered to pay him in cash for the repairs, instead of paying it to the Louisville & Nashville Railroad Company; that said Dickert declined to receive it, and told him that he did not do business that way, whereupon Comer replied that, if he did business that way, he would die a poor man, etc. The complaint was amended by adding a second count and a third count, and at the conclusion of the third count was the following: "But plaintiff does not sue, and does not claim from the defendant any sum, for and on account of punitive or exemplary damages, but seeks to recover under this count only compensatory damages, including such presumptive damages as the law may presume that he has sustained for injury to his reputation for and on account of the wrongful act of the defendant in publishing said article, without proof that he has actually sustained and suffered said damages to his reputation."

Demurrers were filed to these counts on many grounds, but for the purpose of this opinion the following only need be set out: (2) "Because it is not averred or shown that at least five days before beginning this suit the plaintiff served notice in writing on the publisher or publishers of the newspaper wherein the article complained of in the complaint is alleged to have been published, specifying the statement or statements in said article alleged by him to be false and defamatory." (3) Same as 2, down through the word

"defamatory," with the following additional: "And it does not appear from said count that defendant had no principal office of publication within the state of Alabama." (4) Same as 2, down through the word "defamatory," and adds the following: "Although it appears from said complaint that defendant's principal office of publication was within this state." (5) "Said complaint shows that said publication was a privileged communication." These demurrers were sustained by the court, plaintiff declined to plead further, and there was judgment for defendant.

FRANK S. WHITE & SONS, and CABANISS & WEAKLEY, for appellant.—The publication complained of was libelous per se.—*Iron Age Pub. Co. v. Kruger,* 85 Ala. 519; *Ivey v. Pioneer Co.,* 113 Ala. 349; *Wafford v. Meeks,* 129 Ala. 349; 13 A. & E. Ency. of Law, 295-6 and note. The act is unconstitutional as being vicious class of legislation.—*Park v. Free Press Co.,* 1 L. R. A. 599; *Hanson v. Krehbiel,* 64 L. R. R A. 790. It is further unconstitutional because the subject of the statute is not fairly embraced within the title.—*Moses v. Mayer,* 52 Ala. 198; *Lindsey v. Savings Asso.,* 120 Ala. 156. It was not necessary to aver in the complaint that five days' notice had been given and no retraction had been entered, as there was a waiver of all damages except actual damages.—*Clementson v. Tribune Co.,* 47 N. W. 781; *Osborn v. Leech,* 66 L. R. A. 648.

SHARPE & MILLER, and JOHN W. TOMLINSON, for appellee.—The giving of a notice to the publisher in accordance with the requirements of the libel act of February 20, 1899, is a condition precedent to the right of actually beginning suit on account of a libelous article appearing in a newspaper published in this State, and

the absence from this complaint of averments of the giving of such notice to the defendant renders the complaint subject to the demurrer.—*Williams v. Smith,* 134 N. C. 250, 46 S. E. 502; *Reinig v. City of Buffalo,* 102 N. Y. 308, 6 N. E. 792; *Barrett v. City of Mobile,* 129 Ala. 179; *Schroeder v. Colbert County,* 66 Ala. 137; *Shinbone v. Randolph County,* 56 Ala. 183; *Fisher v. Mayor, etc.,* 67 N. Y. 473; *Crocker v. Hartford,* 66 Conn. 387. The act referred to conforms to the constitutional requirements as to singleness of subject and expressiveness of title.—*Montgomery v. The State,* 107 Ala. 372. The act does not constitute partial or unequal legislation in such sense as to be offensive to the Constitution. —*Allen v. Pioneer Press Co.,* 40 Minn. 117, 3 L. R. A. 533; *Osborne v. Leach,* 135 N. C. 626, 66 L. R. A. 608; *Williams v. Smith, supra.* The act does not by providing for the avoidance of punitive damages contravene the constitutional right to damages for injury to reputation.—*Osborne v. Leach, supra; Williams v. Smith, supra.* The requirement of notice does not impose any unconstitutional restriction upon the right to sue for damages.—Cooley's Const. Lim. (7th Ed.), 517; *Reinig v. City of Buffalo, supra; Hanson v. Krehbiel,* (Kan.) 64 L. R. A. 749; *Ex parte Pollard,* 40 Ala. 77. The article alleged as constituting a libel is not, unless by aid of innuendo, per se libelous, and unless so aided its publication does not, in the absence of any averment of special damage, impose any liability on the defendant. —*Trimble v. Anderson,* 79 Ala. 515; *Henderson v. Hale,* 19 Ala. 154.

SIMPSON, J.—This was an action for libel, consisting of the publication in the Age-Herald, a newspaper published in Birmingham, Ala., of the articles shown in the record. The demurrers filed to the complaints, orig-

inal and amended, raise the question of the constitutionality of the act of February 20, 1899, amending section 1441 of the Code of 1896.—Gen. Acts 1898-99, p. 32. One of the grounds of the demurrer is that the notice required by said act to be given before bringing suit is not alleged in the complaint to have been given.

It is contended on the part of the appellant: First. That this act is unconstitutional, because the subject is not clearly expressed in the title, in accordance with section 45 of the present Constitution. See section 2, art. 4, Const. 1875. The title of the act is "An act to amend section 1441 of the Code, regulating actions of slander and libel." The only change made in the section as it stood in the Code is the substitution, for the words "by publishing an apology in a newspaper when the charge had been thus promulgated," of the following, to-wit: "Before any suit for libel shall be brought for the publication of an article in a newspaper in this state, the aggrieved party shall, at least five days before beginning suit, serve notice in writing on the publisher or publishers of said newspaper, at their principal office of publication if within the state, specifying the statements in the said article which he or they allege to be false or defamatory, and if it shall appear on the trial of said action that said article was published in good faith, that its falsity was due to mistake or misapprehension, and that a full correction or retraction of any false statement therein was published in the next regular issue of said newspaper, or in case of daily newspapers within five days after service of said notice aforesaid in as conspicuous a place and type in said newspaper as was the article complained of, then the plaintiff in such case shall recover only actual damages." Under the previous decisions of this court, this was a sufficient compliance with the constitutional re-

quirement.—*Montgomery v. State,* 107 Ala. 372, 18 South. 157. The amendment is clearly pertinent to the general subject of the original section of the Code, to-wit, the regulation of the practice in such cases and the effect to be given to the retraction or amends made before suit.

Appellant next insists that the act in question is unconstitutional, because it denies to the person the protection guaranteed to him by section 13 of the Bill of Rights, that "every person, for any injury done him, in his lands, goods, person or reputation, shall have a remedy by due process of law," and he argues that the term "actual damages" cannot include those presumed and unproved damages of which the law allows a recovery, although in point of fact they may not have been actually sustained. The law presumes certain damages, not on the idea that they have been actually sustained, but because they are the natural and probable consequences of the libel, and the law presumes that they are actually sustained, such as the injury to a man's reputation, which, while it may not be an "actual pecuniary" loss, is nevertheless an actual loss.—Newell on Defamation, Slander, and Libel, p. 838, § 1. Actual damages include all damages, except that class of damages known as "vindictive, punitive, or exemplary damages." Actual damages is the synonym of compensatory damages. Damages are said to be compensatory "when they are such as measure the actual loss," while punitive or vindictive damages exceed the loss or injury actually sustained, "and are given as a kind of punishment to the defendant with a view of preventing similar wrongs in the future."—8 Am. & Eng. Ency. Law (2d Ed.) 542; Newell on Defamation, Slander, and Libel, p. 842; 5 Ency. Pl. & Pr. p. 728.

[Comer v. Age Herald Publishing Co.]

The cases of *Park v. Free Press Co.*, 1 L. R. A. 599, 72 Mich. 560, 40 N. W. 731, 16 Am. St. Rep. 544, and *Hanson v. Krehbiel*, 64 L. R. A. 796, 68 Kan. 670, 75 Pac. 1041, 104 Am. St. Rep. 422, while based upon a statute similar in some respects to the one under consideration, yet are different in an important particular, and the ratio decidendi is that in that statute the term "actual damages" is defined to apply only to property, business, trade, profession, or occupation, and consequently the act is declared unconstitutional, because the party is deprived of the constitutional guarantee as to his reputation. This whole matter is discussed, and the distinction clearly drawn between statutes worded as those were and one worded as ours is, in an able opinion by the Supreme Court of North Carolina, in which the difference between actual and punitive damages is clearly shown, and it is stated that there can be no constitutional objection to the statutory restriction as to punitive damages, because they do not constitute any property right in the plaintiff, but are inflicted on grounds of public policy.—*Osborn v. Leach*, 135 N. C. 628, 47 S. E. 811, 66 L. R. A. 648, 651. The Supreme Court of Minnesota holds that even a statute which defines actual damages in the same language as the Michigan and Kansas statutes is not unconstitutional; but we cite this case because it also decides, in accordance with the rulings of our own court in other matters, that such a statute is not unconstitutional because it relates alone to newspapers, and states the doctrine, which we approve, that it is legitimate and proper, with our constitutional limitations, to enact public laws which "in their objects may be confined to a particular class of persons, if they be general in their application to the class to which they apply, provided the distinction is not arbitrary, but rests upon some reason of public

policy, growing out of the condition or business of such class."—*Allen v. Pioneer Press Co.*, 3 L. R. A. 532, 41 N. W. 936, 12 Am. St. Rep. 707.

Appellant insists that there is no field of operation for this statute, unless the term "actual damages" is taken in a more restricted sense than is given to it in the books, because, even without the statute, there could not be a recovery for vindictive damages in the case described. Yet we cannot suppose that the lawmakers used the term in any other sense than that which the law had given it; and the reason given only suggests another reason for sustaining the statute, because it does not in any way abridge the rights of the parties, but is only a regulation of practice, by which suits may be avoided, or, if entered upon, the issues shortened.

The appellant next insists that, even allowing the constitutionality of the act, yet it is not necessary to allege a compliance with it in the complaint, as the case could go on, and actual damages be recovered. It is true that the Supreme Court of North Carolina seems to have taken this view of the interpretation of a similar statute (as does also the Supreme Court of Minnesota in *Clementson v. Minn. Tribune*, 45 Minn. 303, 47 N. W. 781) ; *Osborn v. Leach, supra;* but it will be observed that in that case the question came up, not on a demurrer to the complaint, as in this case, but on a motion to nonsuit the plaintiff and the court said that was improper, "because good faith, honest mistake, and reasonable ground of belief were affirmative defenses which the court could not adjudge." In the case now under consideration, as stated, the demurrers were sustained to the complaint, and the plaintiff declined to amend or plead further. But, however that may be, we know of no way of ascertaining what the Legislature meant, except by the words which were used in the enactment,

and when the statute reads that, "before any suit for libel shall be brought," this notice shall be given "five days before bringing suit," we cannot give any other construction to it than that this is a condition precedent to the bringing of the suit.—*Crocker v. City of Hartford*, 66 Conn. 387, 34 Atl. 98; *Reining v. City of Buffalo*, 6 N. E. 792, 102 N. Y. 308; *Williams v. Smith*, 134 N. C. 249, 46 S. E. 502; *Scarbrough v. Watson*, 140 Ala. 349, 351, 37 South. 281, and cases there cited. To give it any other construction would be to leave no field of operation for the statute at all.

It is unnecessary to discuss other matters alluded to in argument. All the Justices concur, except as to the last proposition (as shown by the opinion herewith filed), and Justices HARALSON and ANDERSON concur in full with the writer.

MCCLELLAN, J.—We are unable to agree to the conclusion that the notice mentioned in the act has any field of operation or effect where only actual damages are sought to be recovered. The sole purpose to be effected by the giving of the notice to the publisher is to afford him an opportunity to exempt himself from liability for exemplary damages; and, if the aggrieved party waives, as, of course, he may do, any claim to that class of damages, the notice is robbed of the only reason for its existence or requirement. If the whole act and the obvious legislative purpose are given consideration, it is inconceivable that the lawmakers intended the notice to be potential to inhibit the institution of an action against a publisher for libel, notwithstanding the aggrieved party relinquishes or renounces any claim of the character to be, in the event, affected by the notice provided. In this act it must be that, when the purpose for which the notice is required is entirely removed, the

necessity for the notice ceases as well. We feel constrained to the conclusion that the third count of the amended complaint, which waives all claim to punitive or vindictive damages, is not defective in its failure to allege the giving of the notice or otherwise.

Reversed and remanded.

TYSON, C. J., and DOWDELL and DENSON, JJ., concur.


