104 So.2d 309

**G. E. ARMSTRONG**

v.

**Nathan E. FARRELL et al.**

**4 Div. 860.**

Supreme Court of Alabama.

June 19, 1958.

J. Hubert Farmer, Dothan, for appellant.

Huey D. McInish and Alto V. Lee, III, Dothan, for appellees.

COLEMAN, Justice.

This is an appeal by a defendant from an adverse verdict and judgment in an action of trover for conversion of certain dry cleaning equipment. Defendant's motion for a new trial was overruled. The only error assigned is the action of the trial court overruling the motion for a new trial.

The grounds of the motion argued by appellant are that:

"A. The verdict of the jury was a compromise verdict.

"B. Under no phase of the testimony was there a basis for the finding of the jury that the defendant was liable to the plaintiffs in the sum of $1500.00, the amount of the jury verdict.

"C. Certain calculations made by the jury in their deliberation in the jury room after they had received the Court's charge as to the law in the case, and which calculations were returned together with their verdict and delivered to the Clerk of this Court, show that said verdict was a compromise verdict."

The suit was originally against G. E. Armstrong and Hansel A. Mauldin. The trial court, without objection by any party, gave the affirmative charge in favor of the defendant Mauldin.

The complaint consisted of one count in code form, to which the defendants pleaded not guilty. The verdict was against defendant Armstrong for $1,500 and judgment was entered accordingly.

The facts appear to be that in November, 1952, defendant, Armstrong, sold the dry cleaning equipment to the plaintiffs (Nathan E. Farrell and his wife, Gladys E. Farrell) for $4,500. Paintiffs paid $1,000

608

in cash and gave the defendant, Armstrong, a mortgage on the equipment for $3,500 to secure payment of the balance of the purchase price. The mortgage debt was due and payable in installments of $100 per month, beginning December 18, 1952.

It appears that plaintiffs were not financially successful in operating the dry cleaning plant and did not pay the first installment when it was due or any other installment of the mortgage debt.

The plaintiff, Nathan E. Farrell, testified that in January, 1953, he and his wife sold and conveyed to the defendant, Armstrong, a certain house and lot located in Geneva, Alabama, for an agreed price of $3,000; that the house and lot at the time of said sale were subject to certain prior encumbrances, payment of which was assumed by the defendant, Armstrong, leaving a balance or equity in the amount of $1,200 which was to be applied as a credit on the debt owed by the plaintiffs for the unpaid balance of the purchase money for the dry cleaning equipment.

Armstrong's testimony was to the effect that the credit due plaintiffs for their equity in the house and lot was less than the $1,200 claimed by Farrell because Armstrong was required to pay and did pay $1,290 instead of $1,000 to satisfy one of the mortgages on the house and lot, and also because Armstrong was required to pay certain debts incurred by plaintiffs in operating the dry cleaning plant which amounted to $170. The testimony as to these contentions of Armstrong and the amount of the credit to which plaintiffs were entitled for their equity in the house and lot was in dispute and presented an issue of fact for the jury.

Some time after conveyance of said house and lot to Armstrong as aforesaid, as appellant states in brief:

"It further developed in the trial of the case that by and through some arrangement between mortgagee and mortgagors, the dry cleaning plant in question was placed in the possession

of the mortgagee and appellant here, appellant insisting that the property had been abandoned and appellees insisting otherwise. * * *

"The case was submitted to the jury under the court's instructions, to the effect in brief, that defendant Armstrong was liable under the pleadings unless he was justified in his foreclosure of the mortgage on the theory that the mortgagors had made default in the payment of the debt or had abandoned the property, one or both. The Court further instructed the jury that should they find the defendant liable, the amount of their verdict should be the value of the property in question at the time defendant Armstrong sold the same to Mauldin.

"When the jury returned its verdict in favor of the plaintiffs in the sum of $1500.00, they also delivered to the clerk of the court a certain paper with certain calculations, and which was introduced as evidence at the hearing of the motion for a new trial. The same has been identified as plaintiffs' 'Exhibit C' (TR 61). The Court's close attention is called to this particular exhibit, * * *. The Court's particular attention is likewise called to the testimony of Nathan Farrell, one of the appellees, to the effect that the property in question was worth $3500.00 (TR 11-12); likewise to the testimony of this appellant that this property was worth $3865.00 (TR 30). It should also be noted that appellant Armstrong bought in the property in question at his foreclosure sale for the sum of $2325.00."

Appellant's argument in support of Grounds A and B of the motion for new trial is concisely stated in brief as follows:

"Under the issues as made up by the Court and presented to the jury, and in the language of the trial court in its charge to the jury 'if the plaintiff is entitled to recover, the plaintiff would

be entitled to recover the reasonable market value of the property.' (TR 39.)

"The jury concluded that appellant's foreclosure sale was unlawful and that as a possible consequence his sale of the property in question to one Mauldin was wrongful and in destruction of the rights of the plaintiffs; and that therefore, the plaintiffs were entitled to recover.

"There being no pleas of set-off or recoupment, the only other issue to be ascertained and determined by the jury was the reasonable value of the property in question. * * *

\* \* \* \* \* \*

"In view of the rule of law as laid down in the cases above cited, it appears clear that as stated in Holcombe & Bowden v. Reynolds, 200 Ala. 190, 75 So. 938, '* * * Neither the court nor jury have the right to arbitrate or compromise differences between the parties, and hence, when it appears that the verdict cannot be justified on any reasonable hypothesis of fact founded in the evidence, the finding must be held to have been the result of compromise or mistake and, upon proper proceedings, must be set aside or reversed.'

"Considering the testimony of the plaintiff to the effect that the property was worth $3500.00, *defendant Armstrong's testimony that it was worth $3865.00* and the evidence to the effect that it actually sold for at least $3500.-00, and probably $3865.00, it is hard to say how any other reasonable hypothesis of fact might be had. The only other testimony is that the property sold at foreclosure sale, with one bidder, for the sum of $2325.00. It seems wholly obvious that had the jury's verdict been for $2325.00, there still could be no reasonable basis in fact for such verdict in the face of the very reasonable and great preponderance of testimony that it was worth at least $3500.-00. * * * (Emphasis supplied.)

"It thus seems crystal clear that, *without more,* the finding of the jury must be held to have been the result of compromise or mistake."

We are of opinion that the verdict of the jury can be justified on a reasonable hypothesis presented by the evidence and does approximate one of the conclusions possible under the evidence.

The rule for ascertaining the amount of damages to be awarded a mortgagor in an action against the mortgagee for conversion of the mortgaged property has been stated by this court as follows:

"The measure of damages in such case, in the absence of evidence showing a wilful conversion, fraud or gross negligence, is the value of the mortgagor's special property in the chattel represented by the difference between value of the property, where such value exceeds the amount of the mortgage debt, and the balance due on the mortgage debt at the time of the conversion, with interest from the date of the conversion. If the value of the property does not exceed the debt only nominal damages are recoverable." W. Cleve Stokes Co. v. Rushton, 238 Ala. 458, 460, 191 So. 614, 615. See, also, 89 C.J. S. Trover and Conversion § 164, p. 643; 53 Am.Jur. 905.

As we understand appellant's argument, he does not appear to contend that the rule stated above is not the law, but rather says that under the pleading and instructions to the jury in the instant case, the jury could not lawfully award damages less than the total value of the converted property and that such total value could not be, in this case, diminished or reduced by the amount of the debt due from plaintiffs to the defendant Armstrong.

This court, in 1830, in an action of trover where "a trial was had on the plea of the general issue," in considering the admis-

sibility of evidence to reduce the damages said:

"* * * In this action, and on the issue joined, the jury could fairly take into consideration, by way of reducing the amount of damages, the value of the complainant's residuary interest in the property in contest; and evidence of a legal character, should have been admitted to show what was the probable value of such interest. * * *" McGowen v. Young, 2 Stew. 276, 279;

and in 1923, in an action for conversion we said:

"* * * Evidence in reduction of damages may have been given under the general issue." Hodges v. Westmoreland, 209 Ala. 498, 500, 96 So. 573, 575.

■ Under 89 C.J.S. Trover and Conversion, § 112 g., p. 606, the text recites:

"The general issue or general denial puts in issue the value of the property at the time of the conversion, and *defendant is entitled to prove any facts in reduction of damages. * * *"* (Emphasis supplied.) ;

and at note 67, on the same page, Hodges v. Westmoreland, supra, is cited as authority to support that part of the text which we have emphasized.

See, also, Ballenger v. Liberty National Life Insurance Co., 266 Ala. 407, 409, 96 So.2d 728, 730, where it was said:

"* * * The plea of the general issue to an action of trover puts in issue every matter, except release, which might show the plaintiff never had a cause of action or that he ought not to recover. (Citations omitted.)"

■ Thus it appears that the rule is well established in this jurisdiction, that in trover, evidence in reduction of plaintiff's damage is admissible under the general issue. Under this rule, when evidence in re-

duction of damages is introduced under the general issue, that plea becomes, in effect, a plea alleging the facts proved to reduce the damages. As a result, there is a failure of that premise of appellant's argument on this appeal wherein he contends that there is no pleading setting up the facts which reduce the damages.

Such evidence would not be permitted to go to the jury unless the jury is to be permitted to consider the same in arriving at its verdict. In the case at bar the jury cannot be said to have disregarded the evidence in arriving at its verdict, although the court did not expressly instruct the jury to take into account the amount of plaintiffs' debt and to deduct the same from the value of the property in calculating the amount of the verdict.

■ Evidence showing plaintiffs' indebtedness to Armstrong was introduced by plaintiffs without objection on the part of defendant, and, indeed, on direct examination, the defendant, Armstrong, testified as follows:

"Q. Mr. Armstrong, you sold this equipment did you not to the plaintiff in this case, Mr. and Mrs. Farrell? A. Yes, sir.

"Q. How much cash was paid to you at the time? A. $1,000.00.

"Q. The balance of the purchase price was taken care of how? A. Out of the note introduced in evidence there for $3500.00.

"Q. That has been introduced in evidence and set out here? A. Yes, sir."

Defendant cannot now say that evidence of plaintiffs' debt could not be considered by the jury in reduction of damages.

■ Under the rule for the measure of damages hereinabove set out, the amount of the verdict may be ascertained from the evidence as follows: The evidence showed without dispute that plaintiffs purchased the

dry cleaning equipment for $4,500, of which they paid $1,000 and owed a balance of $3,500 secured by a mortgage on the equipment. Farrell testified to a $1,200 credit, and if the jury believed him they could find that the mortgage debt had been reduced to $2,300. The defendant, Armstrong, himself had testified, as stated in his brief, that the equipment was worth $3,865. Such value of the property, $3,865, reduced by the debt of $2,300, leaves a difference of $1,565 as the amount of plaintiffs' damages.

The $65 difference between the result of this calculation and the actual verdict may be attributed to an allowance for interest or some of the disputed items claimed by defendant. We are not persuaded that the verdict is the result of compromise or is not supported by the evidence. Grounds A and B of the motion for new trial were overruled without error.

Ground C of the motion for new trial concerns a certain paper which appellant introduced in evidence in support of the motion. This paper shows certain calculations said to have been made during the jury's deliberation. Appellant urges that this paper shows that the verdict was the result of an attempt by the jury to compromise the difference between the parties. Appellant argues that the jury first decided on the verdict of $1,500, and then, in order to ascertain if such verdict was fair, subtracted this amount from the total amount received by Armstrong on the dry cleaning property.

A compromise verdict has been described as one " * * * which is reached only by the surrender of conscientious convictions as to a material issue by some members of the jury in return for a relinquishment by other members of their like settled opinion on another issue, the result not commanding the approval of the whole panel, * * *. However, * * * a verdict which is the result of real harmony of thought growing out of an open-minded discussion between jurors with a willingness to be convinced, a proper regard for the opinions of others, a reasonable distrust of individual views not shared by their fellows, and a fair yielding on one reason to a stronger one, each juror having in mind the great desirability of unanimity both for the parties and for the public, is not open to criticism." 53 Am.Jur., Trial, § 1033, p. 714.

It is not entirely clear to us that the paper received in evidence was identified by the foreman of the jury (who supposedly handed the paper to the clerk along with the verdict) as the same paper which came from the jury room. Be that as it may, even if the paper had been clearly identified, it shows nothing more than the addition and subtraction of several amounts which correspond to certain amounts mentioned in the testimony. No quotient or anything else appears on the paper to clearly indicate more than an effort to relate certain items of the evidence to each other. To hold that this paper shows the verdict to be the result of compromise or mistake would require speculation or conjecture.

In Holcombe & Bowden v. Reynolds, supra, cited by appellant, this court granted a new trial on the ground that the verdict could not be justified on any reasonable hypothesis of fact found in the evidence. As we have undertaken to show, there was ample evidence to sustain the jury's verdict in the instant case.

The grounds of the motion for new trial argued by appellant were overruled without error and the judgment below is due to be and is affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON, SIMPSON, GOODWYN and MERRILL, JJ., concur.