Carl M. LIMBAUGH,
Plaintiff-Appellant,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., a corporation, et al.,
Defendants-Appellees.

No. 85–7408.

United States Court of Appeals,
Eleventh Circuit.

March 18, 1986.

---

Leo Costello, Costello & Stott, Thomas E. Mitchell, Birmingham, Ala., for plaintiff-appellant.

Maynard, Cooper, Frierson & Gayle, Birmingham, Ala., A. Inge Selden, Birmingham, Ala., for defendants-appellees.

Before JOHNSON and HATCHETT, Circuit Judges, and ALAIMO *, Chief District Judge.

ALAIMO, Chief District Judge:

In its second appearance before this Court,[1] this case presents a question concerning Alabama damages law. The district court granted summary judgment in favor of Merrill Lynch on the basis that appellant Limbaugh had not demonstrated any actual injury and, hence, was not entitled to recover either compensatory or punitive damages under Alabama law. We AFFIRM.

I.

This is a diversity suit by an investor (Limbaugh) against his broker (Merrill Lynch) for unlawful conversion. Merrill Lynch allegedly converted monies from Limbaugh's "Ready Assets" account to recoup the purchase price of securities it was forced to buy on the open market when Limbaugh unlawfully retained shares of stock he previously had authorized his broker to sell. The uncontroverted facts surrounding this transaction were set out in *Limbaugh v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* and need not be repeated in detail here. A short recapitulation will suffice to preface our discussion of the applicable Alabama damages law.

Learning from a newspaper article that Golden Enterprises, Inc., stock had split, Limbaugh called Merrill Lynch and directed it to sell 365 shares of his stock for $18.00 or more per share. The securities were sold and Limbaugh received $6,510.86 from the sale. He promptly invested $6,510.00 in a "Ready Assets" money market fund managed by Merrill Lynch.

Two weeks later, Merrill Lynch called Limbaugh and told him the stock had been sold prior to the "ex-dividend" date; consequently, the 182 shares that resulted from the split legally belonged to the purchaser of the 365 shares. Limbaugh refused to deliver the stock certificates for the 182 shares, so Merrill Lynch bought replacements at prevailing market rates, then liquidated $2,725 of Limbaugh's Ready Assets account to cover the purchase price and to pay itself the customary commission.

Limbaugh sued to recover the $2,725, and the district court granted Merrill Lynch's motion for summary judgment. In *Limbaugh v. Merrill Lynch, supra,* this court agreed that Limbaugh was indebted to the brokerage house, but held that Merrill Lynch's confiscation of money Limbaugh had placed in a trust account might give rise to an action for conversion under Alabama law. We expressly declined to decide whether Limbaugh suffered any actual damages and remanded the case to the district court for further proceedings.

On remand, the district court did not decide whether Limbaugh had stated a via-

* Honorable Anthony A. Alaimo, Chief U.S. District Judge for the Southern District of Georgia, sitting by designation.

1. For its first appearance, *see Limbaugh v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 732 F.2d 859 (11th Cir.1984).

ble cause of action for conversion. Instead, the court granted Merrill Lynch's motion for summary judgment on the basis that Limbaugh had not demonstrated any actual injury and, hence, was not entitled to recover damages under Alabama law. On appeal, Limbaugh contends that (1) the trial court erred in concluding he suffered no actual damages, and (2) proof of a technical conversion, without more, sufficed to support an award of nominal damages for the violation of his property rights.

## II.

Alabama law recognizes both compensatory and punitive damages. Compensatory damages, sometimes called actual damages, measure the actual loss sustained, while punitive damages are awarded to punish a wrongdoer and to deter the commission of similar acts in the future. *Comer v. Age-Herald Publishing Co.*, 151 Ala. 613, 44 So. 673, 675 (1907).

In order to receive an award of either compensatory or punitive damages under Alabama law, a plaintiff first must prove he has suffered an actual injury. *Purcell Co. v. Spriggs Enterprises, Inc.*, 431 So.2d 515, 523 (Ala.1983); *Skipper v. South Central Bell Telephone Co.*, 334 So.2d 863, 866 (Ala.1976). Actual injury need not be a pecuniary loss, however. Humiliation, embarrassment, harm to reputation and other intangible losses constitute actual injuries as well. *See, e.g., Skipper v. South Central Bell, supra,* 334 So.2d at 866; *Comer v. Age-Herald Publishing, supra,* 44 So. at 675.

If Merrill Lynch is correct in asserting that Limbaugh suffered no cognizable injury from the confiscation of his funds, then Alabama law would preclude an award of damages in the case at bar and summary judgment would be proper. Limbaugh, however, points to two alleged injuries which he contends would support compensatory damages. First, he claims he was injured because the price of the shares purchased on the open market exceeded the price of his shares at the time the initial transaction took place. Second, Limbaugh contends he was injured because Merrill Lynch charged him an $80.18 commission to make the covering purchase.

What Limbaugh fails to recognize is that, by willfully refusing to deliver the 182 shares generated by the stock split, he compelled Merrill Lynch to make the covering purchase. We previously determined that Limbaugh was indebted to his broker for the price of the stock Merrill Lynch had to buy. *Limbaugh v. Merrill Lynch, supra,* 732 F.2d at 861. It is immaterial that Golden Enterprises stock rose in value between the time Merrill Lynch sold Limbaugh's shares and the time Merrill Lynch made its covering purchase. Limbaugh owed Merrill Lynch the sum that the brokerage house had to pay.[2] Thus, when Merrill Lynch liquidated the purchase price of the stock from Limbaugh's Ready Assets account, it merely extinguished a debt of equal value.[3]

The same reasoning applies with equal force to the $80.18 commission Merrill Lynch charged Limbaugh. By affidavit, Merrill Lynch stated that it is standard

---

**2.** Moreover, Limbaugh had actual notice that he would be held liable for the cost of covering any shortfall. The "due bill" mailed to him in confirmation of his original sale stated:

> In the event that the securities sold are not delivered to us by the indicated "Date Due," we will be required to purchase these securities within a reasonable time and to hold you responsible for any resulting deficiency.

*See also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clayton,* 488 F.2d 974 (5th Cir.1974) (customer held liable for increased value of stock as of date of sale where stock was transferred to him by mistake).

**3.** It is well established that payment of a debt which one is already obligated to pay is not a legal injury in any sense. *See, e.g., Mall, Inc. v. Robbins,* 412 So.2d 1197, 1201 (Ala.1982) ("payment of a debt that a person is under a pre-existing duty to pay is not a legal injury for which one may be recompensed"); *Amason v. First State Bank,* 369 So.2d 547, 551 (Ala.1979) (no injury where plaintiff induced to repay a $5,000 debt through false representations); *Armstrong v. Farrell,* 267 Ala. 606, 104 So.2d 309 (1958) (in action for conversion, plaintiff's recovery must be reduced by amount rightfully owed to defendant).

practice in the brokerage industry to charge a commission when a customer fails to tender the full number of shares sold, thereby necessitating a covering purchase. That commission is used in part to defray the costs and expenses associated with the covering purchase. Had Limbaugh relinquished the 182 shares of stock, no covering purchase would have been necessary and, thus, no commission would have been charged. Under these circumstances, the district court properly concluded that the commission was "a valid part of the debt Limbaugh owes Merrill Lynch." Since appellant rightfully owed his broker the $80.18 commission as an incidental cost of covering the shortfall, Limbaugh was not injured when Merrill Lynch confiscated funds from his Ready Assets account to recoup its loss.

In sum, it is clear that Limbaugh suffered no cognizable injury when Merrill Lynch liquidated $2,725 from his Ready Assets account to extinguish the debt caused by Limbaugh's failure to deliver the proper number of shares. Accordingly, Limbaugh is not entitled to recover compensatory damages for Merrill Lynch's act.

Even if he sustained no pecuniary loss, Limbaugh still maintains he is entitled to nominal damages because Merrill Lynch invaded his property rights by unilaterally seizing money from his Ready Assets account without resorting to legal process. An award of nominal damages would, in turn, support a claim for punitive damages under Alabama law. *See Rushing v. Hooper-McDonald, Inc.,* 293 Ala. 56, 300 So.2d 94 (1974); *Maring-Crawford Motor Co. v. Smith,* 285 Ala. 477, 233 So.2d 484 (1970); *Cooper Chevrolet Co. v. Taliaferro,* 439 So.2d 158 (Ala.Civ.App.1983).

This argument is based on a misapprehension of the current[4] Alabama law of damages, and must fail. As the Alabama Court of Civil Appeals recently explained:

It has been the law of this state since 1846 that nominal damages are always proper when a breach of a legal duty has been made out and the extent of the injury is not shown by the evidence.... In other words, in order to recover nominal damages for fraud the plaintiff need not show the exact extent of his damages, *but only that he was damaged.*

*Long-Lewis Hardware Co. v. Lightsey,* 392 So.2d 545, 546–47 (Ala.Civ.App.1980) (emphasis added), *citing Bagby v. Harris,* 9 Ala. 173 (1846). Other Alabama cases likewise hold that nominal damages can be recovered only where the loss is unquantifiable or where actual injury can be inferred. *See Skipper v. South Central Bell, supra,* 334 So.2d at 866; *Comer v. Age-Herald Publishing, supra,* 44 So. at 674, *Wilson v. Draper,* 406 So.2d 429 (Ala.Civ.App.1981) (nominal damages proper where actual injury can be inferred from evidence); *Shafer v. Timmons,* 51 Ala.App. 157, 283 So.2d 609 (1973) (same as *Wilson* ).[5]

Appellant cites several automobile conversion cases as support for the proposition that a technical invasion of a naked property right will support an award of nominal

---

**4.** Certain turn-of-the-century Alabama cases do imply that nominal damages may be recovered for a technical invasion of one's rights, regardless of whether actual injury was sustained. Close examination of those opinions, however, reveals that each of the cases also involved actual injury. *See, e.g., Burk v. Knott,* 20 Ala. App. 316, 101 So. 811 (1924) (false imprisonment case where plaintiff was detained by police without probable cause simply because he and his bride rented a room in a boarding house of ill-repute); *Goodson v. Stewart,* 154 Ala. 660, 46 So. 239 (1908) (defendant trespassed on land to cut timber after having been warned not to enter); *Louisville & Nashville Railroad v. Smith,* 141 Ala. 335, 37 So. 490 (1904) (cutting ditch across plaintiff's land with-

out first obtaining an easement or otherwise compensating her for use of her property); *Alabama G.S. Railroad v. Sellers,* 93 Ala. 9, 9 So. 375 (1891) (plaintiff fell ill after conductor made her exit the train with her baby and walk back to her station of destination in a driving rain). Thus, any suggestion in those cases that nominal damages are recoverable in the absence of actual injury is purely *dictum.*

**5.** *See also Morrison Assurance Co. v. North American Reinsurance Corp.,* 588 F.Supp. 1324, 1328 (N.D.Ala.1984), *aff'd,* 760 F.2d 279 (11th Cir.1985) ("[w]hile nominal damage can support an award of punitive damages, there must be *some* damage").

damages. *See Ray Hughes Chevrolet, Inc. v. Gordon,* 294 Ala. 638, 320 So.2d 652 (1975); *Roebuck Auto Sales, Inc. v. Wallace,* 293 Ala. 231, 301 So.2d 546 (1974); *Cooper Chevrolet, Inc. v. Taliaferro, supra; Richard Kelley Chevrolet Co. v. Seibold,* 363 So.2d 989 (Ala.Civ.App.1978). His reliance is misplaced. Each of those cases presented a situation where actual injury was either proven or could have been inferred from the evidence.

In both *Ray Hughes* and *Roebuck Auto,* for example, a car repair shop refused to release a vehicle to its rightful owner until an outstanding bill was paid. Not only did the repair shop deprive the owner of a means of transportation, but the value of the article seized also far exceeded the amount of the debt. Here, of course, Merrill Lynch confiscated only the exact sum Limbaugh owed. *Cooper Chevrolet* involved a fraudulent misrepresentation about the age and condition of a used car. Although plaintiff could not prove in dollars and cents how much the deception cost him, the court held he suffered an actual injury sufficient to support an award of nominal damages.[6] And in *Richard Kelley Chevrolet v. Seibold,* plaintiff was deprived of clothes, personalty, a paycheck and his means of transportation when a car dealer refused to return his car after Seibold reneged on a tentative purchase agreement.

The case at bar involves neither fraud nor egregious conduct. Limbaugh was deprived only of what he already owed Merrill Lynch, no more. Appellant has proven no actual injury, nor can any be inferred from the facts. Limbaugh, therefore, is not entitled to recover either compensatory or nominal damages. *Purcell Co. v. Spriggs Enterprises, supra,* 431 So.2d at 523; *Skipper v. South Central Bell, supra,* 334 So.2d at 866. In addition, since Limbaugh could not show he suffered any injury, summary judgment in favor of Merrill Lynch was proper because "[m]ere evidence of conversion itself is not enough to invoke the right to punitive damages."

*Crabtree v. Ford Motor Credit Co.,* 413 So.2d 1161, 1163 (Ala.Civ.App.1982). Limbaugh's claim for exemplary damages must also fail.

AFFIRMED.

---

**6.** *See also Maring-Crawford Motor Co. v. Smith,* 285 Ala. 477, 233 So.2d 484, 491 (1970) (actual injury inferred where car dealer represented automobile as being new rather than used).