The United States District Court for the Middle District of Alabama has certified these questions:
 "1. Given that only punitive damages are recoverable in an Alabama wrongful death suit and that punitive damages are not apportionable among defendants according to fault, or for any other reason, and that the decedent's personal representative has already been paid for alleged wrongful acts of other defendants which resulted in the death of plaintiff's decedent, what is the effect of pro tanto settlements by two defendants on the trial of the third remaining defendant who is also charged with contributing to the death of the decedent?
 "2. Given that the plaintiff has already received $450,000 in pro tanto settlements, is defendant Schering Corporation required to pay damages only if the jury verdict exceeds $450,000?
 "3. Is either the defendant or the plaintiff entitled to introduce into evidence for the jury's consideration the fact that the plaintiff has already received $450,000 for the decedent's wrongful death?"
 FACTS
Elma Tatum, as administrator of the estate of Dixie V. Tatum, deceased, filed a *Page 1043 
wrongful death case in the Circuit Court of Montgomery County, alleging that Mrs. Tatum died as the result of her physician's negligence in failing to follow directions for administering injectable gold in the treatment of Mrs. Tatum's arthritis. Tatum amended the complaint to include claims of negligence and violation of the Alabama Extended Manufacturer's Liability Doctrine against Schering Corporation and another manufacturer of the ethical drugs used to treat Mrs. Tatum. He alleged that these manufacturers placed on the market a drug that was unreasonably dangerous and that they failed to adequately warn Mrs. Tatum's physician of the dangers involved. Plaintiff Tatum reached a settlement with the physician in the amount of $400,000 and with one of the drug manufacturers in the amount of $50,000. Pro tanto releases were given to these defendants and they were dismissed as parties. This created diversity of citizenship between the plaintiff and the remaining defendant, and that remaining defendant, Schering Corporation, removed the case to the United States District Court for the Middle District of Alabama.
The certificate from the district court states that the phrasing of the questions is intended as a guide and is not meant to restrict our consideration of the impact of a pro tanto settlement with a tort-feasor in a wrongful death case on the subsequent trial of another alleged tort-feasor.
The certified questions have been briefed extensively by able counsel for both sides, and the Court has heard persuasive oral arguments in support of, and in opposition to, a change in our rule that there can be no apportionment of punitive damages, even when there are joint tort-feasors, regardless of the degree of their individual culpability.
Although highly persuasive arguments can be made that prior cases of this Court were incorrectly decided, this Court has resolutely refused to change the rule of law that punitive damages are not apportionable among joint tort-feasors. In fact, this Court reaffirmed the rule last term in the case ofBlack Belt Wood Co. v. Sessions, 514 So.2d 1249 (Ala. 1987).
There, this Court specifically asked the parties to brief the same issue presented by these certified questions, and in our opinion we wrote, as follows:
"One basic question is presented on this review:
 "Should this Court change its longstanding rule that there can be no apportionment of damages among joint tort-feasors, especially in death cases where this Court has concluded that only punitive damages are recoverable?
 "Based upon a review of the history of § 6-5-410 [Code 1975] and a review of cases from other jurisdictions, we could change the rule regarding apportionment of punitive damages in wrongful death cases and adopt the majority rule, but we decline to do so."
Black Belt, supra, at 1260.
The first Alabama case dealing with the apportionment issue was Bell v. Riley Bus Lines, 257 Ala. 120,57 So.2d 612 (1952). That case was a wrongful death action. The plaintiff's decedent was killed when a truck and trailer collided with the bus in which he was riding. We find that case dispositive of the questions here presented, and we quote from it extensively:
 "The appellant sued Riley Bus Lines; Riley Bus Lines, a corporation; Isaac Riley and Sarah Riley, doing business as Riley Bus Lines; and Herrington Motor Company and Truck Lines and Wallace Herrington doing business as Herrington Motor Company and Truck Lines, for wrongfully causing the death of her intestate, basing her right to sue on § 123, Title 7, Code of 1940, commonly referred to as 'The Homicide Act.' [Now § 6-5-410.]
 ". . . [the complaint contained this allegation:] 'Plaintiff avers that the said Howard Bell was killed as a proximate result or consequence of the concurrent negligence of Riley Bus Lines, or Riley Bus Lines, a corporation, or Sarah Riley and Isaac Riley doing business as Riley Bus Lines, and Herrington Motor Company and Truck Lines, or Wallace Herrington, *Page 1044 
doing business as Herrington Motor Company and Truck Lines, or their respective agents who were then and there acting within the line and scope of their authority, in and about the management or operation of the said Bus and the said automobile truck and trailer.'
"* * *
 "The trial was by jury duly demanded by the plaintiff and the jury returned a verdict in the following words and figures:
" 'We the Jury return verdict in favor of Plaintiff and assess damages against Riley Bus Line $5,000.00 and Wallace Herrington $2,500.00.' Judgment was entered on said verdict and Isaac Riley, Saralee Riley and Riley Bus Lines, a partnership composed of Isaac Riley and Saralee Riley, seasonably made motion for a new trial on the grounds that said 'verdict and judgment are contrary to the law of the case; said verdict and judgment are not sustained by the great preponderance of the evidence; said verdict and judgment are arbitrary and prejudicial; said verdict and judgment are contrary to law,in that the complaint claimed damages from Riley Bus Lines andWallace Herrington for the death of plaintiff's intestate,allegedly caused by the concurring negligence of both saidjoint defendants, and the verdict and judgment were returnedand entered in favor of plaintiff against both said defendantsand was not in a lump sum against both defendants butapportioned the damages in the sum of $2500 against WallaceHerrington and in the sum of $5000 against Riley Bus Lines;said verdict being in words and figures as follows: "We thejury return verdict in favor of plaintiff, and assess damagesagainst Riley Bus Lines $5000 Wallace Herrington $2500 /s/Norman Beverly, foreman." ' [Emphasis added.]
 "The motion for new trial also contained many other grounds. The motion was granted by the court and new trial was ordered. Hence this appeal.
 "It is strenuously insisted by the appellant and the appellee Wallace Herrington that the jury were authorized to apportion punitive damages between the defendants accordant to the degree of culpability in causing the death of plaintiff's intestate. As authority for their contention they cite decisions from other jurisdictions mostly dealing with common law actions against joint tort feasors, which were collated in Hall v. McClure, 112 Kan. 752, 212 P. 875, 30 A.L.R. 790 and in Thomson v. Catalina, 205 Cal. 402, 271 P. 198, 62 A.L.R. 239. [Emphasis added.]
"* * *
 "It has long been settled in Alabama that damages recoverable in such actions are punitive of the person who wrongfully causes the death. Richmond Danville R.R. Co. v. Freeman, 97 Ala. 289, 11 So. 800. It has also long been settled that the statute creates a single cause of action unknown to the common law and the personal representative is authorized to sue as an agent of legislative appointment for effecting the declared public policy of preventing homicides. Breed v. Atlanta B. C.R. Co., 241 Ala. 640, 4 So.2d 315; Also it is settled that the suit under this statute may be prosecuted against joint tort feasors whose wrongful act or negligence proximately causes the death; and they may be sued jointly or separately, but there being but a single cause of action, one recovery and satisfaction is a bar to further prosecution of any other suit on that cause of action. McCoy v. L. N.R.R. Co., 146 Ala. 333, 40 So. 106. Nevertheless, the personal representative may settle with one tort feasor and prosecute his action against another, provided he reserves the right in taking the release which releases only the person with whom the settlement is made. Steenhuis v. Holland, 217 Ala. 105, 115 So. 2. [Emphasis in original opinion.]
"* * *
 "There is nothing in this statute that authorizes the jury to apportion the damages against tort feasors sued in this *Page 1045 
action. Nor does it recognize degrees of culpability and as applied if the wrongful act or negligence proximately caused the death, the plaintiff is entitled to 'recover such damages as the jury may assess in a court of competent jurisdiction within the State of Alabama.' The well settled trial practice in our courts has been to require a single verdict, fixing a lump sum regardless of the culpability of tort feasors. City of Birmingham v. Hawkins, 196 Ala. 127, 72 So. 25; Layman v. Hendrix, 1 Ala. 212; City of Tuscaloosa v. Fair, 232 Ala. 129, 167 So. 276; 64 C.J. p. 1084; Bull v. Albright, 254 Ala. 29, 47 So.2d 266.
 "In the absence of express legislative authority we are not willing to depart from this well settled trial practice. Therefore the opinion prevails that the court did not err in setting aside the verdict and granting a new trial as to all defendants. [Emphasis added.]"
Id., 257 Ala. at 122-24, 57 So.2d at 613-15.
In Black Belt, this Court noted that it had the power to abrogate the longstanding rule of law in wrongful death cases, but that "it should, as a matter of public policy, leave any change of [the] interpretation to the legislature."514 So.2d at 1263.
In answer to each of the questions, we opine that the damages recoverable in a wrongful death action are punitive in nature, as Question One correctly assumes, and that in a wrongful death action filed against joint tort-feasors, a plaintiff is entitled to a single recovery that will represent the total amount of punitive damages the jury may assess for the wrongful death. This total recovery assessed, in an amount determined by the jury as punishment for the homicide, cannot be apportioned among joint tort-feasors.
In this case, if the plaintiff proves to the jury that the total amount of the punitive damages that should be assessed against the joint tort-feasors exceeds the sum of $450,000, then the $450,000 that the plaintiff has received by way of pro tanto settlements would be a partial satisfaction of the total amount determined by the jury. On the other hand, if the jury determines that the total amount of the plaintiff's punitive damages for the homicide is an amount equal to or less than $450,000, then, in that event, the plaintiff is entitled to recover nothing from alleged joint tort-feasor Schering Corporation, because the plaintiff will have already had his recovery satisfied by the payment of the $450,000 pursuant to the pro tanto settlements.
In answer to your third question, we opine that a person injured by joint tort-feasors may accept partial satisfaction and release one or more pro tanto and proceed against the other; however, the tort-feasors not so released may plead the release as a bar to that amount paid by the released tortfeasor(s) or may place it in evidence to show payment for the injury up to the amount shown in the release. Steenhuisv. Holland, 217 Ala. 105, 115 So. 2 (1927);Bucyrus-Erie Co. v. Von Haden, 416 So.2d 699 (Ala. 1982).
In Bucyrus-Erie Co. v. Von Haden, this Court said:
 "It is well settled that a person injured by joint tort-feasors may release one or more pro tanto and proceed against the others. The tort-feasors may plead the release as a bar to that amount paid by the released tort-feasor or may place it in evidence showing payment for the injury up to the amount shown in the release. Anderson v. Kemp, 279 Ala. 321, 184 So.2d 832 (1966). In lieu of allowing defendant to place the pro tanto settlements into evidence, the trial court properly informed the jury of the total amount of the settlements and instructed them to subtract that figure, $145,000, from the full amount of damages, if any sustained by plaintiff."
Under the doctrine of these cases, the remaining defendant would be entitled to plead the release as a bar to that amount paid by the released tort-feasors, or that defendant could place it in evidence to show payment for the injury up to the amount shown in the releases. Under the doctrine ofBucyrus-Erie, the Court, in lieu of allowing the defendant to place the pro tanto settlements into evidence, could *Page 1046 
instruct the jury on the total amount of the settlements, as was done in Bucyrus-Erie.
CERTIFIED QUESTIONS ANSWERED.
ALMON, SHORES, BEATTY, ADAMS and STEAGALL, JJ., concur.
TORBERT, C.J., concurs in part, and dissents in part.
JONES and HOUSTON, JJ., dissent.