The issue presented for review is whether Maryland Casualty Company is entitled to full and complete reimbursement of benefits previously paid and to a release of future liability of sums to be paid under Code 1975, § 25-5-60 ("Workmen's Compensation — Compensation for Death"), when the deceased employee's widow and minor children recover damages from third parties under Code 1975, § 25-5-11(a), substantially in excess of the amount of Maryland Casualty's liability under § 25-5-60.
The attorney for the widow and minor children had a contingency fee contract of one-third of all sums recovered in the action against the third parties. Maryland Casualty does not question the reasonableness of this fee and agrees that, if it prevails here, it is obligated to pay one-third of the amount reimbursed to it and one-third of the future liability from which it is released as its proportionate amount of this attorney fee, under § 25-5-11(e).
In the case before us, the trial court ascertained that the settlement with the third parties was for an amount equal to only 20% of the value of the case. This ruling is unsupported by admissible evidence. With punitive damages the case is "worth" whatever amount will "adequately punish and deter" — nothing more, nothing less. *Page 471 
This Court has recognized the special nature of an attempted settlement of a minor's claim. Before such a settlement can be approved, there must be a hearing, with an extensive examination of the facts, to determine whether the settlement is in the best interest of the minor. Large v. Hayes,534 So.2d 1101 (Ala. 1988); Abernathy v. Colbert CountyHospital Board, 388 So.2d 1207 (Ala. 1980); TennesseeCoal, Iron R.R. Co. v. Hayes, 97 Ala. 201, 12 So. 98
(1892).
In Large and Abernathy, the following fromTennessee Coal, Iron R.R. Co. was quoted with approval:
 "The court may upon being advised of the facts, upon hearing the evidence, enter up a valid and binding judgment for the amount so attempted to be agreed upon, but this is not because of the agreement at all — that should exert no influence — but because it appears from the evidence that the amount is just and fair, and a judgment therefor will be conservative of the minor's interests."
97 Ala. at 210, 12 So. at 103.
We probably would not sustain as "just and fair" a trial court's order settling a minor's claim for 20% of its value if the damages were compensatory. Here, though, we are dealing only with punitive damages. This Court has written that " 'the plaintiff is without legal right to them [punitive damages], as [the right to damages] attaches to actual damages suffered.Comer v. Age-Herald Pub. Co., 151 Ala. 613, 44 So. 673, 13 L.R.A. (N.S.) 525. Such damages [punitive] may be even forbidden, or affirmatively withheld, by legislative enactment, so far as impinging rights of property are concerned.' "Dowling, Admr. v. Garner, 195 Ala. 493, 496,70 So. 150, 151-52 (1915), quoting Louisville N.R.R. v.Street, 164 Ala. 155, 51 So. 306, 20 Am.Cas. 877 (1909). "Most courts no longer give deference to a plaintiff's claim of a right to punitive damages." T. Christensen, TheApportionment of Punitive Damages Among Joint Tortfeasors, 25 Ariz.L.Rev. 579, 585 (1983).
Since punitive damages are not to compensate a victim for loss but to punish and deter, the state alone is considered the true party plaintiff, and in seeking punitive damages, a plaintiff is an agent of the state and not a victim. Note,Apportionment of Punitive Damages, 38 Va.L.Rev. 71, 73 (1952).
Just as a trial judge would probably violate his duty in permitting a minor's claim to be settled for 20% of its value if the damages were compensatory, a trial judge would probably violate his duty in allowing the state's interest to be compromised for 20% of the punishment and deterrent effect the state is entitled to.
Because the purpose of punitive damages is not to compensate the plaintiff but to punish the wrongdoer and to deter others from committing similar wrongs in the future, the amount of the damages rests largely in the sound discretion of the trier of fact. Dees v. Gilley, 339 So.2d 1000 (Ala. 1976);Boise Cascade Corp. v. Lee, 291 Ala. 666,286 So.2d 836 (1973). The amount must be related to the degree of the wrongdoing on the part of the defendants and the necessity of preventing similar wrongs in the future; and if the action is brought under the Alabama Wrongful Death Act, Ala. Code 1975, § 6-5-410, the trier of fact cannot consider the pecuniary value of the life of the deceased, for such damages are not to compensate the family of the deceased on account of the death or to compensate for the pecuniary loss sustained by the family on account of the death. Airheart v. Green, 267 Ala. 689, 104 So.2d 687 (1958). But see the opinions of Torbert, C.J., concurring in part and dissenting in part, and Houston, J., dissenting, in Tatum v. Schering Corp.,523 So.2d 1042, 1046, 1047-63 (Ala. 1988).
The trial judge acknowledged that only punitive damages were recoverable in this action and approved a settlement of $200,000. We must assume that he determined that the settlement of $200,000 was adequate to punish the defendants and to prevent similar wrongs in the future. The trial judge's finding that the settlement was for 20% of its value is unsupported by *Page 472 
admissible evidence.[1]
 "If the injured employee, or in case of his death his dependents, recover damages against [a party other than the employer whose act or omission caused the employee's injury or death], the amount of such damages so recovered and collected shall be credited upon the liability of the employer for compensation, and if such damages so recovered and collected should be in excess of the compensation payable under
[Chapter 5, 'Workmen's Compensation,' Code 1975, §§ 25-5-1 through § 25-5-144], there shall be no further liability on the employer to pay compensation on account of such injury or death. . . . [T]he employer shall be entitled to reimbursement for the amount of such compensation theretofore paid on account of such injury or death. . . ." (Emphasis added.)
Code 1975, § 25-5-11(a).
The term "employer" ". . . shall, if the employer is insured, include his insurer, such insurer being entitled to the employer's rights, immunities and remedies under [Chapter 5, Workmen's Compensation, Code 1975, §§ 25-5-1 through 25-5-144]." § 25-5-1(4), Code 1975. Maryland Casualty, as the insurer of the employer, has the rights and remedies provided by § 25-5-11(a).
In a zealous attempt to protect the interests of the minors, in accord with the spirit of Large v. Hayes, supra,Abernathy v. Colbert County Hospital Board, supra, andTennessee Coal, Iron R.R. Co. v. Hayes, supra, the trial court held that since the plaintiffs were receiving only 19.3462% of the value of their case after expenses, other than attorney fees, Maryland Casualty should receive only 19.3462% of the amount it had paid and would have paid, but for the third-party settlement, less the attorney fee, under the common fund doctrine. This resulted in Maryland Casualty's having to pay $2,692.88, in addition to the $46,110 that it had paid to the plaintiffs.
In Lewis v. Railroad Retirement Board, 256 Ala. 430,54 So.2d 777 (1951), cert. denied, 343 U.S. 919, 72 S.Ct. 677,96 L.Ed. 1333 (1952), this Court dealt with the common fund theory. In that case, the Court held that the services rendered by the attorneys in the suit were services for their client and that the Railroad Retirement Board only incidentally benefited from them; the Court added:
 "As a result of the views which we have here expressed, the allowance of a fee cannot be sustained on a theory of services rendered for the common benefit of all the parties."
256 Ala. at 436, 54 So.2d at 782.
Judge Holmes, in Henley Clarke v. Blue Cross-BlueShield of Alabama, 434 So.2d 274, 276 (Ala.Civ.App. 1983), wrote:
 "Generally, the 'common fund' doctrine is an equitable principle designed to compensate an attorney whose services on behalf of his client operated to create, discover, increase, preserve, or protect a fund to which others may also have a claim. 7A C.J.S., Attorney Client § 334.
 "The 'common fund' doctrine has traditionally been applied to certain well defined, limited areas; most commonly, in cases for the protection of trusts, for the protection of a decedent's estate, actions where one creditor acted to the benefit of other creditors, and actions by stockholders for corporate waste and the recovery of corporate property. The doctrine has also been applied in insurance subrogation cases. See 49 A.L.R. 1149; 107 A.L. R. 749; 2 A.L.R.3d 1441; 20 Am.Jur.2d, Costs § 85.
 "As a general rule, the application of the 'common fund' doctrine depends upon at least two requirements. There must be a 'fund' from which to compensate the attorney, and the attorney's services must benefit that fund. 7A C.J.S., Attorney *Page 473 Client § 334(b). In addition, the benefit rendered must be a direct benefit, either to the fund or the party to be charged with the fee. Lewis v. Railroad Retirement Board, 256 Ala. 430, 54 So.2d 777 (1951), cert. denied, 343 U.S. 919, 72 S.Ct. 677, 96 L.Ed. 1333 (1952)."
Though attorney fees were denied in Henley Clarke
and Lewis v. Railroad Retirement Board, they were permitted in Smith v. Alabama Medicaid Agency,461 So.2d 817, 820 (Ala.Civ.App. 1984), where the Medicaid Agency was subrogated to the entire amount paid but had to pay the proportionate amount of the attorney fee on the amount to which it was subrogated; and in Eagerton v. Williams,433 So.2d 436, 451 (Ala. 1983), in which Justice Almon wrote for the Court:
 "Consistent with the underlying philosophy of the common fund doctrine, an award of attorneys' fees from this fund spreads the costs and expenses of litigation among all those who benefit. The attorneys herein rendered their services not only for the litigant landowners, but also for all other members of the class. As this Court stated in Kimbrough v. Dickinson, 251 Ala. 677, 684, 39 So.2d 241 (1949):
 " 'The rule rests upon the ground that where one litigant has borne the burden and expense of the litigation that has inured to the benefit of others as well as himself, those who have shared in the benefits should contribute to the expense.' "
Code 1975, § 25-5-11(e), provides:
 "In any settlement made under this section with a third party by the employee or, in the case of his death, by his dependents, the employer shall be liable for that part of the attorney's fees incurred in the settlement with the third party, either with or without a civil action, in the same proportion that the amount of the reduction in the employer's liability to pay compensation bears to the total recovery had from such third party."
Therefore, there is a statutorily prescribed common fund doctrine involved in a third-party recovery in the workmen's compensation context. The plaintiffs' contingent fee contract with their attorneys provides that the attorneys shall receive one-third of all sums recovered. Maryland Casualty is to pay one-third of all sums that it recovers from the common fund and one-third of all sums that it is relieved of paying due to the common fund. It agrees to do this. No more than that is required of it under § 25-5-11(e) or any equitable common fund doctrine.
Because of the deference we extend to trial courts, we will affirm a judgment appealed from if it is supported on any valid ground, even though that was not the ground assigned by the trial court. Smith v. Equifax Services, Inc.,537 So.2d 463 (Ala. 1988); Tucker v. Nichols,431 So.2d 1263 (Ala. 1983).
Donna H. Tiffin, one of the appellees, argues that Maryland Casualty consented to the judgment entered by the trial court. We have reviewed the record and are not persuaded that there is any support for Ms. Tiffin's contention that Maryland Casualty consented to receive only 19.3462% of the amount paid by it.
Ms. Tiffin relies on State Farm Mutual AutomobileInsurance Co. v. Cahoon, 287 Ala. 462, 252 So.2d 619
(1971), and Jackson v. Weaver, 516 So.2d 702
(Ala.Civ.App. 1987), to uphold the trial court's judgment.Cahoon is distinguishable from the case at issue. In that case, there was uninsured motorist coverage. Cahoon sued in an action based on a contract between Cahoon and State Farm. This Court held, in reference to what is now § 25-5-11:
 "The statutory right of subrogation created by the above provision is in favor of the employer when compensation is due an injured employee, and the injury is caused to the employee under circumstances also creating a legal liability for damages on the part of any party other than the employer."
287 Ala. at 468, 252 So.2d at 623. Clearly, in the case at issue, the plaintiffs contended that the death of the employee was caused by the actionable fault of parties other than the employer.
Jackson v. Weaver, supra, also involved uninsured motorist coverage and medical benefits coverage. No attempt was made *Page 474 
to recover medical expenses from the employer. InJackson, the Court of Civil Appeals stated, at 706, that " 'there must clearly be some sort of double recovery, i.e., a recovery from two sources that exceeds damages,' " for the employer to obtain the benefit of § 25-5-11(a), quotingHolder v. Weatherly, 456 So.2d 812, 814
(Ala.Civ.App. 1984).
In Holder v. Weatherly, the Court of Civil Appeals, at 814, wrote:
 "The primary goal of workmen's compensation legislation is to aid the injured person, but not to allow a double recovery. 'Double recovery' has been defined as recovering from two sources an amount that exceeds the damages. It could also mean any recovery from two sources whether or not the amount recovered exceeds the losses. 2A A. Larson, The Law of Workmen's Compensation
§ 71.23(h) (1983). The former definition is to this court the better view.
 " 'There can be no conceivable policy objection to allowing an injured person to retain two recoveries that, when combined, still do not make him whole.' 2A A. Larson, The Law of Workmen's Compensation § 71.23(h) (1983). We agree."
In Holder, the Court of Civil Appeals concluded that since there was no proof offered of the employee's damages, it could not be asserted that the employee's estate was awarded a double recovery by receiving workmen's compensation death benefits after having received $14,000 from the tort-feasor whose negligence killed the employee and $10,000 from the employer's uninsured motorist coverage. The court held that the trial court did not err in disallowing a credit of the uninsured motorist coverage award against the workmen's compensation benefits.
We do not agree that § 25-5-11(a) permits an employer to be reimbursed for sums paid under the Workmen's Compensation Act only when an employee, or his dependents in case of his death, has recovered from two sources an amount that exceeds the employee's damages. Clearly, the words of § 25-5-11(a) do not limit an employer's recovery in such a way. The Legislature has the power to enact legislation to adopt the policy that Professor Larson advocates and that the Court of Civil Appeals has adopted. We do not. We must interpret §25-5-11(a), as it is written, not as we may wish that it were written. When we do so, we must hold that the sums recovered by the plaintiffs in this action from third parties must be credited against the liability of Maryland Casualty for compensation and that, since they exceed the amount of compensation payable under the workmen's compensation laws, Maryland Casualty has no further liability on account of Mr. Tiffin's death and is entitled to reimbursement for the amount of compensation already paid to the Tiffins for Mr. Tiffin's death, subject to Maryland Casualty's liability for attorney fees under § 25-5-11(e).
The attorney fees should be computed in accordance with the formula adopted in Fitch v. Insurance Co. of NorthAmerica, 408 So.2d 1017, 1019 (Ala.Civ.App. 1981):
 Employer's = X Reduced Liability ------------------- ----------------- Third-Party Attorney's fees Recovery and expenses
When applied in this case, it yields the following result:
 $ 87,000 = X -------- ------------------------- $200,000 $64,495.34 + $6,503.79
X = $30,884.62
Subtracting the attorney fees from the reimbursement due Maryland Casualty ($46,110 — $30,884.62), the balance is $15,225.38. The portion of the trial court's order directing that Maryland Casualty pay $2,692.88 is reversed, and a judgment is rendered in favor of Maryland Casualty in the amount of $15,225.38.
REVERSED AND JUDGMENT RENDERED.
TORBERT, C.J., and MADDOX and BEATTY, JJ., concur.
ALMON, J., concurs in the result.
[1] This was based upon the attorneys' response to the trial court's question "[W]hat do you feel is the settlement value of the plaintiffs' lawsuit if those facts were known and could be proven to anybody's reasonable satisfaction? What would be the settlement value of the plaintiffs' case assuming argumentatively that there was no question about the limits of coverage or the defendant's ability to pay?" *Page 475