This is an appeal by Partlow and Imogene Wilson from a judgment entered on a jury verdict awarding W.S. Green, Jimmy W. Cochran, Mary F. Cochran, John M. Johnson, and the Dukona Corporation, N.V., $20,127.60 in compensatory damages and $21,450 in punitive damages for the wrongful cutting of timber. We affirm, conditionally.
Partlow and Imogene Wilson own approximately 463 acres of land in Jackson County. They sold the timber on a portion of that land to Parks Log Company, Inc. ("Parks"). Parks hired Howard Cox to cut and remove the timber. Cox, at Mr. Wilson's direction, began to cut timber on adjoining land owned by the plaintiffs who, shortly thereafter, filed suit against the Wilsons, Parks, and Cox, seeking an injunction to stop the cutting on their land. They also sought damages from the defendants pursuant to Ala. Code 1975, § 35-14-1, as well as compensatory damages from Parks and Cox, and compensatory and punitive damages from the Wilsons, for trespass and conversion. The trial court issued the injunction. Parks and Cox filed a cross-claim against the Wilsons, alleging that the Wilsons were liable to them to the extent that they (Parks and Cox) were liable to the plaintiffs, and for attorney fees and other costs. Parks and Cox also sought damages from the Wilsons for breach of contract and fraud. The Wilsons defended the claims against them on the ground that they had acquired title to the land in question by adverse possession. The case was tried to a jury on the plaintiffs' claims for damages and on the Wilsons' claim of title by adverse possession.[1] The jury returned a verdict for the plaintiffs. That verdict, in pertinent part, reads as follows:
"We, the Jury, find in favor of the following plaintiffs and against the defendants, and assess damages as follows:
 For plaintiff, W.S. Green $12,400.00 For plaintiffs, Jimmy W. Cochran and Mary F. Cochran 400.00 For plaintiff, Dukona Corporation 6,200.00 For plaintiff, John M. Johnson 1,127.60
"We, the Jury, in addition to the foregoing damages
"(X) Do assess punitive damages against Partlow Wilson and Imogene Wilson as follows:
 For plaintiff, W.S. Green $12,100.00 For plaintiffs, Jimmy W. Cochran and Mary F. Cochran 1,650.00 For plaintiff, Dukona Corporation 6,050.00 For plaintiff, John M. Johnson 1,650.00"
The Wilsons filed a motion for a judgment notwithstanding the verdict (J.N. *Page 72 
O.V.) or, in the alternative, for a new trial, asserting that the damages (compensatory and punitive) were excessive. They specifically argued that the evidence did not warrant punishment and that, even if it did, the jury should not have been instructed that it could award damages pursuant to §35-14-1, supra, as well as punitive damages pursuant to the trespass and conversion claims. The trial court denied the motion and the Wilsons appealed. We remanded the case for the trial court to reconsider the Wilsons' motion raising the issue of excessiveness of damages, in accord with Hammond v. City ofGadsden, 493 So.2d 1374 (Ala. 1986). The trial court made a return to this Court, as directed, indicating its action on remand and its reasons therefor. The court stated, in part, that the evidence supported the compensatory and punitive damages awarded to each plaintiff and that the issue regarding a double assessment of punitive damages had not been raised at trial. Accordingly, the trial court refused to alter its previous ruling denying the Wilsons' motion.
Initially, we note that the Wilsons did not object when the trial court instructed the jury that it could assess damages pursuant to § 35-14-1, supra, as well as punitive damages for trespass and conversion. The issue regarding an unlawful double assessment of punitive damages was raised for the first time in the Wilsons' post-judgment motion. Because the error, if any, now alleged was not preserved below, it is not subject to appellate review. Holt v. Davidson, 388 So.2d 548 (Ala. 1980).
The Wilsons contend that the damages awarded by the jury (compensatory and punitive) are excessive. With regard to the punitive damages award, they argue that the evidence was not sufficient to warrant punishment and, therefore, that the judgment should be remitted by the amount of the punitive damages assessed (i.e., $21,450). For the following reasons, we agree that the judgment is excessive and is due to be remitted by the amount of the punitive damages assessed; we reach this conclusion, however, not because the evidence did not warrant the jury's punishing the Wilsons — it did — but because any punitive damages award would, in this case, be excessive.
In Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala. 1989), this Court, quoting City Bank of Alabama v. Eskridge, 521 So.2d 931,932-33 (Ala. 1988), stated as follows:
 " 'The right to a trial by jury in civil cases is guaranteed by § 11, Alabama Constitution; therefore, a jury verdict will not be set aside unless it is flawed, thereby losing its constitutional protection. Upon finding a verdict to be flawed, the trial court, pursuant to A.R.Civ.P. 59(f), and this Court, pursuant to Code 1975, § 12-22-71, may interfere with it. At what point, however, will a damages award require a finding of a flawed jury verdict?
 " ' "First, it may include or exclude a sum which is clearly recoverable or not as a matter of law, or which is totally unsupported by the evidence, where there is an exact standard or rule of law that makes the damages legally and mathematically ascertainable at a precise figure. In these situations, a trial court may, and should, reduce or increase the amount of the verdict to reflect the amount to which the parties are entitled as a matter of law. Second, a jury verdict may be flawed because it results, not from the evidence and applicable law, but from bias, passion, prejudice, corruption, or other improper motive. . . ."
 Hammond v. City of Gadsden, 493 So.2d 1374, 1378
(Ala. 1986).' "
Thus, the invocation of our statutory authority to determine the proper amount of recovery and to affirm the judgment, subject to the filing of a remittitur of the amount in excess of the proper amount, is dependent upon our holding that the presumption of correctness of the jury verdict has been overcome by a clear showing that the amount of the verdict is excessive. It is also well understood that in considering the adequacy or excessiveness of a verdict, each case must be determined on its own facts, and that neither the trial court, nor this Court, may substitute its judgment for that of the jury. Green Oil Co. v. Hornsby, supra. *Page 73 
In dealing with compensatory damages, the interest of the uncompensated victim must always be kept foremost in mind.Layman v. Hendrix, 1 Ala. 212, 214 (1840). See, also, Tatum v.Schering Corp., 523 So.2d 1042, 1048 (Ala. 1988) (Houston, J., dissenting). When considering punitive damages, however, the defendant's right to fair punishment must be considered above the plaintiff's right to recover the fullest amount of punitive damages. See Tatum, supra.
Because the purpose of punitive damages is not to compensate the plaintiff but to punish the wrongdoer and to deter the wrongdoer and others from committing similar wrongs in the future, the proper amount of punitive damages rests largely within the jury's discretion. However, although punitive damages need bear no particular relationship to actual damages, they, nonetheless, must not exceed an amount that will accomplish society's goals of punishment and deterrence.Green Oil Co. v. Hornsby, supra.
To summarize then, in a case such as the present one, where the excessiveness vel non of a jury verdict awarding compensatory and punitive damages is an issue, the focus is onthe plaintiff with regard to the propriety of the compensatorydamages award, and on the defendant with respect to thepropriety of any assessment of punitive damages.
Reviewing the propriety of the compensatory damages awarded to the plaintiffs in the present case, and indulging, as we must, all reasonable inferences in favor of the jury's verdict, it appears to us that the award of compensatory damages is supported by the evidence. Therefore, the Wilsons' contention that the compensatory damages are excessive must fail.
With regard to the jury's assessment of punitive damages, however, what amount is sufficient to punish the Wilsons and to deter them, and others similarly situated, from committing similar acts in the future? Traditionally, the jury has been afforded a great deal of discretion in assessing punitive damages. The exercise of that discretion is, of course, subject to judicial review to insure that the jury's award is not the result of bias, passion, prejudice, corruption, or other improper motive. This Court has recognized, however, that it is possible for a verdict to be excessive even when it is the result of a properly functioning jury. Green Oil Co. v.Hornsby, supra. For example, in assessing punitive damages, the jury is not allowed to consider the financial position of the defendant, Southern Life Health Ins. Co. v. Whitman,358 So.2d 1025 (Ala. 1977). The defendant's financial position is, however, a consideration essential to a post-judgment critique of a punitive damages award. Bearing in mind that punitive damages must not exceed an amount that will accomplish society's goals of punishment and deterrence, we recognize that it is possible for a jury to hear the evidence in the case, make findings of fact, correctly apply the law, and still, albeit unwittingly, assess damages that bear no reasonable relationship to the accomplishment of those goals. Green OilCo. v. Hornsby, supra; see, also, Ridout's-Brown Service, Inc.v. Holloway, 397 So.2d 125, 127-28 (Ala. 1981) (Jones, J., concurring specially).
In the present case, a hearing was held on the Wilsons' post-judgment motion. At that hearing, evidence of the Wilsons' financial position was presented to the trial court. That evidence revealed the following: Mr. Wilson, who was 64 years old, receives a Social Security check each month in the amount of $580. He also receives a monthly pension in the amount of $300. Mrs. Wilson, who was 57 years old, has a disabling nerve disease and receives approximately $90 per month in Social Security disability benefits. From this monthly income of about $970, the Wilsons must expend $454.60 to pay their house note; approximately $190 to pay their automobile note; and the rest to pay for medication and other living expenses. The bank has a mortgage on the Wilsons' house, which was still under construction, and on 63 acres of their land, securing a $40,000 construction loan. Mr. Wilson testified that he had spent about $35,000 on the house. The Wilsons owed approximately $7,000 on their car, which had a fair market value of approximately $8,000. They also own a *Page 74 
truck, with a fair market value of approximately $600, and 10 cows. The Wilsons have no savings, nor do they own any certificates of deposit, stocks, bonds, precious metals, or any other items of personal property with significant value.
The Wilsons do own approximately 463 acres of land having a fair market value of about $200 per acre. Four hundred of those 463 acres were a part of the estate of Mr. Wilson's father. After the death of Mr. Wilson's father, the Wilsons acquired the various interests held by Mr. Wilson's mother and his brothers and sisters. In fact, the Wilsons sold the timber to Parks to raise the funds to pay off a bank loan that was used to purchase the interest of one of Mr. Wilson's sisters — the only remaining outstanding interest in the estate land — and to make certain improvements to their land. The remaining 63 acres, as previously stated, are mortgaged to the bank. Mr. Wilson was raised in Jackson County and, after living in Illinois for 29 years, moved back to Alabama, hoping to build a house on his land and to retire with his wife.
The jury in the instant case did not have the benefit of knowing, as did the trial court, that in addition to being liable for the compensatory damages awarded to the plaintiffs (i.e., $20,127.60), the Wilsons had agreed to pay Parks and Cox $36,951.39 and $4,048.61 respectively, for the damages that they suffered. Other civil actions against the same defendant, based on the same conduct, should also be taken into account in mitigation of the punitive damages award. Green Oil Co. v.Hornsby, supra.
Neither did the jury have the benefit of knowing, as did the trial court, that the Wilsons would inevitably be forced to sell (or suffer a forced sale of) at least 306 acres of their land to satisfy the judgment in favor of Parks and Cox and to pay the actual damages suffered by the plaintiffs — land that had been in Mr. Wilson's family for many years and on which he planned to retire.
Without excusing the Wilsons' actions in cutting their neighbors' timber, we, nonetheless, believe that the trial court erred in not remitting the judgment by the amount of the punitive damages awarded (i.e., $21,450). In our view, an award of punitive damages, under the facts of this case, would do nothing to further society's goals of punishment and deterence. Therefore, the maximum amount that is legally recoverable from the Wilsons is $61,127.60 (this figure representing the $41,000 judgment entered in favor of Parks and Cox and a judgment based on the jury's verdict in favor of the plaintiffs in the amount of $20,127.60, should the plaintiffs accept a remittitur of $21,450).
Therefore, we hold that, by clearly showing at the post-judgment hearing that the punitive damages awarded were excessive, the Wilsons overcame the presumption of correctness that attached to the jury's verdict. Accordingly, unless the plaintiffs, within 30 days from this date, enter a remittitur, pursuant to § 12-22-71, supra, in the amount of $21,450, thus reducing the judgment to $20,127.60, the judgment will be reversed and the cause remanded. On entry of such a remittitur, the judgment will stand affirmed for the reduced amount of $20,127.60.[2]
AFFIRMED CONDITIONALLY.
JONES, ADAMS, STEAGALL and KENNEDY, JJ., concur.
HORNSBY, C.J., and MADDOX, ALMON and SHORES, JJ., dissent.
[1] After the trial had commenced, the Wilsons settled with Parks and Cox. The settlement called for a judgment to be entered in favor of Parks and Cox against the Wilsons in the amount of any judgment entered in favor of the plaintiffs against Parks and Cox. In addition, the Wilsons agreed to pay $36,951.39 to Parks within 30 days of the settlement and to pay $4,048.61 to Cox, also within 30 days. The agreement further provided that in the event the Wilsons failed to make these payments within the time specified, a judgment would be entered against them accordingly. The Wilsons subsequently failed to make the payments and a $41,000 judgment was entered against them pursuant to the terms of the settlement.
[2] We note that the actions in this case and in Green Oil Co. v.Hornsby, supra, were commenced prior to June 11, 1987; therefore, Alabama Code 1975, §§ 6-11-23 and 6-11-24 were not applied.