The Constitution of Alabama 1901, Art. I, § 1, provides as follows:
 "That the great, general, and essential principles of liberty and free government may be recognized and established, we declare:
 "That all men are equally free and independent; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty and the pursuit of happiness."
(Emphasis supplied.) This declaration of the right to life appeared in the Alabama Constitution of 1875 (Art. I, § 1).[1]
"[A]ll men . . . are endowed . . . with [the right to] life" — the right to life that is "inalienable" ("that may not be taken away," Webster's New World Dictionary 708 (2d college ed. 1986), or that "[is] not capable of being surrendered or transferred without the consent of the one possessing such [right]" Black's Law Dictionary 759 (6th ed. 1990)).
The Alabama Constitution has declared that the citizens of Alabama have a right to life. Art. I, § 13, of the AlabamaConstitution, provides "that every person, for any injury done him, in his . . . person . . ., shall have a remedy by due process of law." Therefore, with the Constitution declaring that there is both a right to life and a right to a remedy for a violation of that right, it is my opinion that neither the legislature nor the judiciary can take away from the citizens of Alabama the right to be compensated for the deprivation of the right to life if that deprivation is caused by the wrong of another. The compensation must be paid to the estate of the decedent, which is a legal extension of the decedent beyond death.
I have struggled with this Court's interpretation of the Alabama Wrongful Death Act (Ala. Code 1975, § 6-5-410). See my opinion in Tatum v. Schering Corp., 523 So.2d 1042, 1047-63
(Ala. 1988), which I wrote as an opinion for the Court, but converted into a dissent when I could not obtain the necessary votes for that opinion to carry. Even when researching in preparation for writing Tatum, I was blinded to the fundamental law of the Constitution by the paradigm of the words of §6-5-410, as interpreted in South North Alabama R.R. v.Sullivan, Adm'r, 59 Ala. 272, 279-80 (1877) ("[what is now §6-5-410] creates the right — a right unknown to the common law — and provides a remedy," and "[n]o other remedy can be pursued"), which was predicated upon Lord Ellenborough's dictum in Baker v. Bolton, 1 Campbell 493, 170 Eng. Reprint 1033 (1803) ("[i]n a civil Court, the death of a human being could not be complained of as an injury"). Regardless of our feeble attempt to interpret § 6-5-410 in the light of imagined common law rights and remedies, there is a constitutional right to life; there is a constitutional right to a remedy for a wrongful deprivation of the right to life. The common law is the law of this State only "as it is not inconsistent with the Constitution, laws and institutions of this State." Ala. Code 1975, § 1-3-1. In my opinion, in Alabama it is unconstitutional for the legislature or the judiciary (and I believe that the fault lies exclusively with the judiciary, Tatum,523 So.2d at 1050-52, 1059-61) to deny the right to compensation for the wrongful death of a person. Constitution, Art. I, §§ 1 and 13.
I am a strong believer that if a person's right is diminished or destroyed as a result of the wrongful act, omission, or negligence of another, the person or the person's estate is entitled to full compensation for all damages proximately caused by such wrongful act, omission, or negligence. Tatum,523 So.2d at 1048. The *Page 560 
right of the injured party to full compensation must be paramount. Forty-nine other states allow compensation for wrongful death. There are adequate means for a jury or a court to determine the full compensation for death. See, S. Speiser,Recovery for Wrongful Death (2d ed. 1975), (ch. 3, "Damages").
The Fourteenth Amendment constitutional challenge to the judicial interpretation of the Alabama Wrongful Death Act was preserved in this case. Therefore, we are confronted with the question whether, in wrongful death actions in Alabama, the standard of proof and the jury instruction relating to that standard of proof are consistent with the procedural due process guaranteed by the Fourteenth Amendment. I think that they are not.
Given the present inclination of the Supreme Court of the United States to address the subject of punitive damages, should the Supreme Court of Alabama do nothing now and be told what to do later? I think not. There is an old Barbour County adage: "I'd as soon be hanged for a goat as a sheep."[2]
I previously expressed my concern about the constitutionality of the judicial interpretation of our wrongful death act when this Court was not directly confronted with a substantial wrongful death award. See Tatum v. Schering Corp.,523 So.2d 1042, 1062-63 (Ala. 1988) (Houston, J., dissenting).
A commentator has correctly described the interpretation given our wrongful death act by a majority of this Court:
 "In Alabama an action for wrongful death, if successful, results in an award of punitive damages only. For this reason, the plaintiff may not argue, nor may the jury consider, evidence tending to show that the decedent had an expected lifetime income of any particular amount; that the decedent was exceptionally healthy or sickly; that the death caused someone to incur the expenses of an autopsy, a funeral, and a burial; that lost spousal, parental, or filial consortium had any value; or any other aspect of the decedent's life to which a value might be attached. Rather, the award serves only to further the avowed purposes of punitive damages generally — punishing the defendant, affording a measure of retribution, and deterring others from engaging in conduct similar to that which brought about the decedent's demise. In that sense, the plaintiff acts as the agent of the State, a private district attorney, to vindicate an interest of society and to seek retribution for a harm done to the people. Further, the plaintiff cannot seek, in any measure, compensation for the family or the estate of the decedent. Thus, any award received by the estate is fortuitously compensatory, not intended or designed to be that way. Because only society's interests are sought to be vindicated in wrongful death actions, and because the victim's estate has no right to be compensated for its loss, the assumption that society reaps the benefit of the jury's award is theoretically sound."
L. King, On Civil Punishment and Tort Reform in Alabama, 20 Cumb. L. Rev. 47, 49-51 (1989) (emphasis original).
The United States Supreme Court requires that the standard of proof in a civil action, and the jury instructions relating to that standard, must be consistent with the procedural due process guaranty of the Fourteenth Amendment. Santosky v.Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The United States Supreme Court measures the adequacy of a given civil procedural rule by balancing three factors: (1) how the existing procedures affect the private interests involved; (2) how likely it is that the existing procedures will result in erroneous decisions; and (3) how great the government's interests in the existing procedure are and the burden of administering an alternative procedure. Mathews v. Eldridge, *Page 561 
424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).
I believe that punitive damages are not to compensate a victim for loss but to punish and deter. In considering punitive damages, there is no "amount" to which an uncompensated victim is entitled; and, therefore, there is no need for giving anyone maximum assurance that a certain amount will be recovered. When considering punitive damages, the defendant's right to fair punishment must be paramount.Wilson v. Dukona Corp., 547 So.2d 70 (Ala. 1989).
Using the Mathews v. Eldridge factors, I must conclude that the interpretation given § 6-5-410 by the majority of this Court does not afford a defendant procedural due process, for the following reasons:
(1) If society is the true party plaintiff in wrongful death actions, there is no private interest involved with respect to the plaintiff — only a public interest. See, Maryland CasualtyCo. v. Tiffin, 537 So.2d 469, 471 (Ala. 1988).
 " '[T]he plaintiff is without legal right to [punitive damages], as that right attaches to actual damages suffered. Comer v. Age-Herald Pub. Co., 151 Ala. 613, 44 So. 673, 13 L.R.A. (N.S.) 525
[1907]. Such damages [punitive] may be even forbidden, or affirmatively withheld, by legislative enactment, so far as impinging rights of property are concerned.' "
Dowling, Adm'r v. Garner, 195 Ala. 493, 496, 70 So. 150, 151-52
(1915), quoting Louisville N.R.R. v. Street, 164 Ala. 155,51 So. 306, 20 Am.Cas. 877 (1909). (Emphasis added.) See MarylandCasualty Co. v. Tiffin, 537 So.2d at 471. The only private interest, therefore, is that of the defendant. Two of the defendant's property interests — financial and reputational — are at stake. If found guilty, the defendant pays a judgment, not to compensate a victim, but to punish the defendant and to deter the defendant and others from committing the negligent or wanton act or omitting the act.
In Industrial Chemical Fiberglass Corp. v. Chandler,547 So.2d 812, 837 (Ala. 1988), the majority of this Court held:
 "Although not imposing the stigma of crime or the unique burdens of imprisonment, punitive damages nonetheless serve to place the defendant on notice that it has engaged in conduct considered intolerable by society. . . ." (Emphasis added.)
Because the defendant has so much at stake and because, as the majority of this Court has interpreted the wrongful deathstatute, the plaintiff has nothing at stake (even though I think that the plaintiff has a constitutional right to recover compensatory damages), the first factor of the due process analysis weighs totally in favor of the defendant.
(2) How likely is it that the existing procedures will result in erroneous decisions?
Punishment is based upon a mere preponderance of the evidence. "Preponderance of evidence" as a standard of proof in a civil case means "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not." Black's LawDictionary 1182 (6th ed. 1990). It has been argued that this low standard of proof encourages punishment for what is often minimal culpability without impressing on the minds of the jurors the gravity of their verdict. Nettles and Latta,Alabama's Wrongful Death Statute: A Problematic Existence, 40 Ala. L. Rev. 475, n. 12, at 497-507 (1989).
From examining those cases in which closing arguments are included in the record, my observation from the bench has been that the most substantial verdicts in wrongful death cases are recovered in cases in which the plaintiffs' attorneys, during the closing argument, stress variations on the themes of "responsibility" and "opportunity." In effect, the jurors are told that they are responsible for eradicating negligent, or wanton, or willful homicide and that they more than anyone else have the opportunity to do so by pinching *Page 562 
the defendant's pocketbook nerve with sufficient force. The wrong stressed in such arguments is the death rather than the culpability of the defendant or defendants in causing the death.
The jury is then instructed by the trial court that the amount of damages should be directly related to the amount of wrongdoing on the part of the defendant, Alabama Pattern JuryInstructions — Civil, 11.18, p. 161. However, if the wrongful act or omission of more than one defendant combined to proximately cause the death, the jury is instructed that it cannot apportion the damages according to the wrong of each defendant. Black Belt Wood Co. v. Sessions, 514 So.2d 1249,1267 (Ala. 1986); Tatum v. Schering Corp., 523 So.2d at 1048-49.
It has been extremely difficult for me as an appellate judge to apply the factors set out in Green Oil Co. v. Hornsby,539 So.2d 218 (Ala. 1989), in wrongful death cases. See Olympia Spav. Johnson, 547 So.2d 80 (Ala. 1989) (Houston, J., concurring specially, pp. 88-90). And it appears that in wrongful death cases we, as an appellate court, have recently abandoned theGreen Oil factors and with Delphian efficacy have excised sizable portions of wrongful death jury verdicts, even though the act that we have held created the right of action for wrongful death allowed "such damages as the jury may assess."Burlington Northern R.R. v. Whitt, 575 So.2d 1011 (Ala. 1990). This is a power reserved only by a court of last resort.
Be that as it may, at best this factor in the due process analysis is evenly weighed between the plaintiff and the defendant.
(3) How great is the State's interest in the existing procedures and what is the burden of administering alternative procedures?
 "The State is parens patriae to all its citizens, a benevolent supervisor of all society. Paramount in the State's interests must be that its citizens are treated fairly by the laws to which they are subject. This concern is perhaps especially compelling when the State is using the law to vindicate the greater interests of society at the expense of a single member, such as in the prosecution of a crime or, in the pertinent context, the prosecution of a civil wrongful death action. The touchstone of any law must be fairness, and fairness obviously embraces just results in prosecutions by the State. As for the burden of alternative procedures on the State, a change in existing procedures would cost little more than the fees associated with printing supplements to various legal texts and form books. Such cost is minuscule in comparison to the potential benefits of the change."
L. King, On Civil Punishment, 20 Cumb. L. Rev. at 53-54.
I agree with Mr. King. This final consideration in the due process analysis weighs in favor of the defendant. In my opinion, this Court erred in determining what damages were recoverable under what is now § 6-5-410 in Savannah MemphisR.R. v. Shearer, 58 Ala. 672 (1877), and in South NorthAlabama R.R. v. Sullivan, Adm'r, 59 Ala. 272 (1877). This has caused us to deny recovery for death in some cases in which one could have recovered if the wrongful act that caused death had, instead, caused only a personal injury. See Carter v. City ofBirmingham, 444 So.2d 373 (Ala. 1983), cert. denied,467 U.S. 1211, 104 S.Ct. 2401, 81 L.Ed.2d 357 (1984); Slagle v. Parker,370 So.2d 947 (Ala. 1979). Stare decisis, in wrongful death cases, is deadlocked as in no other area of the law in Alabama by our insistence in allowing only punitive damages for wrongful death. We have failed to recognize the constitutional right to a remedy for a deprivation of the constitutional right to life.
The State must be interested in enforcing its constitutional provisions. Sections 1 and 13 of the Constitution assure citizens of this State a right to be compensated for a wrongful deprivation of the right to live. The State must make certain that this right is not abridged by the judiciary or any other branch of government. Therefore, the State's interest is great in assuring that the erroneous judicial interpretation of *Page 563 
what damages can be recovered in an action for wrongful death is corrected, and the State has a responsibility, rather than a burden, to assure that these constitutional provisions are enforced. These constitutional provisions are not being enforced by the way the majority of this Court has interpreted what damages can be recovered for wrongful death.
Therefore, under the prevailing analytical framework for procedural due process, the judicial interpretation of §6-5-410, insofar as it permits only punitive damages upon proof by a preponderance of the evidence, fails to provide procedural due process.
In this case, although the jury found that Alabama Power Company was negligent, it specifically found that Alabama Power Company was not wanton; therefore, I would reverse and remand for a jury to determine only the full compensatory value of Mr. Turner's life. See S. Speiser, Recovery for Wrongful Death
(2d ed. 1975) (ch. 3, "Damages").
[1] The preambles to the Alabama Constitutions of 1819 and 1865, but not the Constitution of 1861, referred to the right "of" life, but did not in the "Declaration of Rights" declare that there was a right to life.
[2] In spite of this, or perhaps because of this, Barbour County, with a population of approximately 25,000 people, has produced more governors than any other county in the State of Alabama.