I believe that the main opinion states the meaning of §32-7-23(b)(4), Ala. Code 1975, that best comports with the likely intent of the Legislature as that intent is reflected in the statute as written. However, because it is not facially unreasonable to read the statute as State Farm urges, I write specially to note the competing policy considerations that attend the interpretation of the statute.
State Farm Mutual Automobile Insurance Company, the appellant, insured Douglas Lee Esco II under an automobile insurance policy that provided underinsured-motor-vehicle coverage. On February 19, 2002, the motor vehicle Esco was operating collided with a log truck being operated by Jerry Wilson, which was making a right turn from the highway. Esco died as a result of injuries he sustained in the accident.
Debra W. Motley, as Esco's administratrix, filed a wrongful-death action in the Chilton Circuit Court, alleging that Gale Creek Logging Company, Inc., had negligently loaded the logs on the log truck and further alleging that Wilson had blocked both lanes of the highway as he executed his right turn, causing the collision. Motley's amended complaint sought damages for wrongful death from Wilson and from Gale Creek and sought underinsured-motorist benefits from State Farm. State Farm moved to opt out of the case, reserving its right to claim a set-off. State Farm stipulated that
 "insofar as the underinsured motorist claims are concerned, it will be bound by any judgment against the defendants on the issue of liability and damages to the extent of any such coverage afforded to the defendants, which is in excess of any applicable policy limits of any underlying insurance available to the defendants or the plaintiffs."
Motley settled with Wilson for $500,000, the policy limit of the commercial-vehicle insurance policy that insured Jerry Wilson Logging, the sole proprietorship owned by Wilson. Motley also settled with Gale Creek for $225,000, which was paid under Gale Creek's "Commercial General Liability" policy, which had a coverage limit of $1,000,000. State Farm thereafter moved *Page 823 
for a declaratory judgment, arguing that it is entitled to a set-off not only for $500,000, the limit of liability of the insurance policy covering the underinsured motorist, but also for the $1,000,000 policy limit of the Gale Creek "Commercial General Liability Policy."
State Farm noted that § 32-7-23(b)(4), Ala. Code 1975, defines the term "uninsured motor vehicle" as follows:
 "(b) The term `uninsured motor vehicle' shall include, but is not limited to, motor vehicles with respect to which:
". . . .
 "(4) The sum of the limits of liability under all bodily injury liability bonds and insurance policies available to an injured person after an accident is less than the damages which the injured person is legally entitled to recover."
State Farm's policy defines an uninsured motor vehicle as follows:
 "1.a. A land motor vehicle, the ownership, maintenance or use of which is:
 "b. Insured or bonded for bodily injury liability at the time of the accident; . . .
". . . .
 "3. The sum of the limits of liability under all bonds and policies that apply are less than the damages the insured is legally entitled to recover."
Motley and State Farm argue that the language of §32-7-23(b)(4), Ala. Code 1975, is not ambiguous; therefore, they argue, this Court should interpret the statute in accordance with its plain meaning. The main opinion concludes that the phrase in the statute "all bodily injury liability bonds and insurance policies available to the injured person" refers only to bonds and insurance policies of the underinsured motorist. Thus, the main opinion affirms the trial court's ruling that State Farm is entitled to set off only $500,000, that is, the policy limit of the underinsured motorist, Wilson Logging.
Notwithstanding Motley and State Farm's assertion that §32-7-23(b)(4), Ala. Code 1975, is not ambiguous, I believe there is sufficient ambiguity in the statutory language to consider the Legislature's intent in enacting the statute. See United Servs.Auto. Ass'n v. Smith, 57 Ala.App. 506, 510, 329 So.2d 562, 565
(1976). The purpose of requiring underinsured-motorist coverage is to assure, as nearly as possible, a full recovery for the victim in an automobile accident,[2] and, secondarily, to assure that there is no excess recovery. See United Servs. Auto.Ass'n, 57 Ala.App. at 509, 329 So.2d at 564 ("The appellate courts of this state and a majority of the other states which have similar statutes, have construed the legislative purpose of the statute to be that an insured, under every such required coverage for which a premium has been paid, is entitled to collect within the limits of the policy, all damages which he is `legally entitled to recover.'"), and Safeco Ins. Co. v. Jones,286 Ala. 606, 614, 243 So.2d 736, 742 (1970) (stating that the underinsured-motorist statute limits recovery of damages to the amount the injured party is legally entitled to recover).
To provide the injured party the maximum assurance that he or she will receive full compensation for all damage sustained, the principle of joint and several liability allows the injured party to seek recovery from any of multiple tortfeasors. Tatum *Page 824 v. Schering Corp., 523 So.2d 1042, 1048 (Houston, J., dissenting as to the apportionment of punitive damages and citingLayman v. Hendrix, 1 Ala. 212, 214 (1840), for the proposition that "the injured party may proceed against the trespassers jointly or severally"). Therefore, if two or more joint tortfeasors, none of whom is the operator of a vehicle, combined or concurred to cause the injury, then the injured party would be entitled to full compensation for all damage proximately caused by the actions of the joint tortfeasors. Layman v. Hendrix, supra.
The injured party may choose which joint tortfeasor to sue and, after collecting what he can from the first joint tortfeasor, continue his quest for compensation against the next joint tortfeasors, seriatum, until he recovers full compensation for his injury. However, once the injured party has received full compensation for his injury, the principle that one is not entitled to a recovery in excess of full compensation prevents further compensation. Layman, 1 Ala. at 214 ("[A]s soon as there has been one satisfaction for a joint trespass, by one of the co-trespassers, the remedy is extinct to all others.").
It is possible to interpret § 32-7-23(b)(4), as State Farm argues, to mean that before the injured party can collect under his underinsured-motorist coverage the damages the injured party seeks must exceed the combined insurance limits of the insurance policies of all the joint tortfeasors. However, such a result would impair the injured party's effort to achieve a full recovery. For example, under the interpretation of §32-7-23(b)(4) urged by State Farm it is possible that the owner and operator of the vehicle at fault may be underinsured and other recoveries insufficient to fully cover the "damages which the injured person is legally entitled to recover"; nonetheless, the insured purchasing underinsured-motorist coverage may not be entitled to recover under the policy. Consider the case in which the insured suffers a substantial injury. The owner and operator of the motor vehicle principally responsible for the injury is minimally insured but clearly liable; however, there is also an alleged third-party tortfeasor against whom there is a colorable claim but who, as a practical matter, has a very limited liability exposure. If this third-party tortfeasor has very substantial insurance coverage, then the underinsured-motorist insurer might pay nothing under the underinsured-motorist terms of the policy, but the injured party would be far from compensated for the damages he or she is legally entitled to recover from "all bodily injury liability bonds and insurance policies available. . . ." We should not interpret §32-7-23(b)(4) to produce such a result without much clearer statutory language indicating the Legislature intended such an outcome than we have here.
I, therefore, concur in the main opinion.
NABERS, C.J., concurs.
[2] It is a fundamental principle of tort law that in general an injured party is entitled to full compensation for all damages proximately resulting from a tortious act. Beloit Corp. v.Harrell, 339 So.2d 992, 998 (Ala. 1976).